# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JONES, Minors.

UNPUBLISHED
October 27, 2015

No. 326252
Ontonagon Circuit Court
Family Division
LC No. 2013-000013-NA

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to two minor children, RJ and GJ, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (j) (reasonable likelihood that the children will be harmed if returned to the parent).[1] We remand this case to the trial court for redetermination of the children's best interests, but otherwise reject respondent's claims.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2013, petitioner, the Department of Health and Human Services ("DHHS"), filed a petition for the removal of RJ, GJ, and another child[2] from respondent's home.[3] The petition included a series of allegations indicating that respondent had neglected and abused the children, and that respondent's home was an unfit place for the children to live. Later that month, petitioner filed a supplemental petition that included additional allegations of neglect and abuse and again indicated that respondent's home constituted an unfit or unsafe home environment. At the preliminary hearing in September 2013, the trial court determined that it could exercise jurisdiction over the children and authorized the petition in light of respondent's admissions—albeit with explanation—to three of the allegations in the petition: (1) that respondent slept in a camper, located on a campsite next to a lake, while the children played

---

[1] The court also terminated the parental rights of the children's father, but he has not appealed that decision and, as a result, is not participating in this appeal.

[2] The third child is not a subject of this appeal.

[3] Before the petition for removal was filed in August 2013, respondent had been under the attention of Child Protective Services and received services from DHHS.

outside without supervision; (2) that RJ, a toddler, walked along a well-traveled highway by herself while respondent was inside the home bathing another child; and (3) that respondent grabbed RJ by her hair to prevent her from walking onto a roadway when the family was walking home from the store. It is undisputed that the trial court failed to comply with MCR 3.971(C) when it accepted respondent's plea. However, the record clearly indicates that the trial court stated on the record, before respondent admitted the three allegations, that the court would have jurisdiction over the children if it accepted respondent's admissions. Following the hearing, the children were placed in their father's care.

Between September 2013 and May 2014, respondent was offered numerous services to address her parenting skills and anger issues, which included, among other things, anger management classes, parenting classes, counseling services, parenting aide assistance, and guidance for improving respondent's home environment and properly providing for the children. Throughout this time period, respondent demonstrated some improvement in her interactions with the children during their supervised visits, although she occasionally regressed and became overwhelmed with supervising the children.

In May 2014, RJ and GJ were removed from their father's care and returned to respondent. Respondent's home environment showed improvement, but she resisted services for GJ and began to miss appointments with her parenting aide, her counselor, and her caseworker and expressed frustration with, and resistance to, petitioner's involvement in her life. In July 2014, it became evident that respondent had reverted to inappropriate and violent parenting of her children.

In September 2014, a supplemental petition for removal was filed, which included allegations that respondent inappropriately disciplined and supervised the children, and that her home was an unfit place for the children to live. In particular, the petition alleged that (1) respondent lifted RJ off of a shopping cart by her hair, forcefully pushed RJ against a wall, and yelled at RJ with her face inches away from RJ's face; (2) respondent placed tape over GJ's and RJ's mouths to make them stop talking; and (3) respondent pushed GJ with her foot, dragged GJ out of the store using GJ's foot, and then pushed the cart into GJ while GJ was on the ground. The trial court entered an emergency order removing the children from respondent's care. Ultimately, the children were placed with respondent's aunt and uncle.

In October 2014, a supplemental petition was filed, which sought the termination of respondent's parental rights on the basis that respondent was unable to control her anger and temper during challenging parenting situations, exhibited abusive and neglectful parenting practices, displayed an inability to utilize proper parenting techniques in order to ensure the safety of the children, and failed to provide structure and supervision for the children. The trial court found that termination of respondent's parental rights to GJ and RJ was proper pursuant to MCL 712A.19b(3)(c)(*i*) and (j). The court further found that termination was in the children's best interests. Although the court noted that respondent had made some progress with regard to maintaining a clean home environment and providing food for the children, the court found that respondent did not demonstrate "the same progress in controlling her temper and parenting her children in a safe and controlled manner," reverting back to violent and destructive parenting practices, especially when she was stressed. The trial court also noted that petitioner had provided respondent with all of the services that it could offer, but, despite these services,

respondent demonstrated "negligible progress" and failed to address her mental health issues. Respondent now appeals.

## II. VALIDITY OF ADJUDICATION

Respondent first asserts that the trial court erroneously assumed jurisdiction over the children on the basis of her admissions, arguing that (1) she did not intend for her admissions to function as a plea, and (2) the court failed to comply with MCR 3.971 and advise her of the consequences of entering a plea before she stated her admissions on the record. We, however, conclude that respondent may not challenge the trial court's initial exercise of jurisdiction in this appeal.

"Child protective proceedings have long been divided into two distinct phases: the adjudicative phase and the dispositional phase." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). "The adjudicative phase occurs first and involves a determination whether the trial court may exercise jurisdiction over the child, i.e., whether the child comes within the statutory requirements of MCL 712A.2(b)." *Id*. "The dispositional phase involves a determination of what action, if any, will be taken on behalf of the child." *Id*. at 537. Ordinarily, in cases where "termination occurs following the filing of a supplemental petition for termination after the issuance of the initial dispositional order," "an adjudication cannot be collaterally attacked following an order terminating parental rights." *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008); see also *In re Gazella*, 264 Mich App 668, 679-680; 692 NW2d 708 (2005) ("Matters affecting the court's exercise of its jurisdiction may be challenged only on direct appeal of the jurisdictional decision, not by collateral attack in a subsequent appeal of an order terminating parental rights."), superseded in part on other grounds as stated in *In re Hansen*, 285 Mich App 158, 163-164; 774 NW2d 698 (2009), vacated on other grounds 486 Mich 1037 (2010). However, an exception to this rule applies when "termination occurs at the initial disposition as a result of a request for termination contained in the original, or amended, petition for jurisdiction . . . ." *In re SLH*, 277 Mich App at 668.

In this case, the adjudication and final disposition were separated by a lengthy period of attempts at reunification. Because this appeal is from a dispositional order of termination entered after the initial adjudication, respondent is precluded from challenging the trial court's exercise of jurisdiction in this case. See also *In re Hatcher*, 443 Mich 426, 438-440; 505 NW2d 834 (1993) (stating that an error in the exercise of jurisdiction may be challenged in a direct appeal, but may not "be challenged years later in a collateral attack").

## III. SUFFICIENCY OF REUNIFICATION SERVICES

Next, respondent argues that the trial court erred in terminating her parental rights because termination was premature in light of the fact that petitioner offered no further services after the children were removed from respondent's care for the second time. Likewise, respondent contends that petitioner failed to fulfill its duty to expend reasonable efforts to reunify respondent with her children. We disagree.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

To preserve an issue regarding the adequacy of the services provided during child protective proceedings, a respondent must object or otherwise raise the issue when the services are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) ("The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." [Quotation marks and citation omitted.]). Respondent asserts that this issue was preserved through petitioner's claim in its petition for the termination of respondent's parental rights that it had expended reasonable efforts for reunification and through the statement of respondent's counsel in his written closing argument that "termination [was] not the solution" in light of respondent's compliance with her service plan before the children were removed from her care. However, we deem this issue unpreserved because neither of the statements cited by respondent challenged the adequacy of the services offered by petitioner. Accordingly, we review respondent's claim for plain error affecting substantial rights. *Demski v Petlick*, ___ Mich App ___, ___; ___ NW2d ____ (2015) (Docket No. 322193); slip op at 9. "To avoid forfeiture under the plain error rule, three requirements must be met: (1) the error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights." *Id*. at ___; slip op at 9-10 (quotation marks and citation omitted).

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4); see also *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). When the petitioner fails to offer services or provide a reasonable opportunity for a respondent to participate in services, the result is a gap in the evidentiary record that renders termination of parental rights improper. *In re Mason*, 486 Mich 142, 158-160; 782 NW2d 747 (2010). However, "[w]hile the DH[H]S has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. When a respondent fails to adequately participate in, and benefit from, services that are in fact provided by petitioner, she is not entitled to claim that petitioner was required to provide additional services. See *id*.

## B. ANALYSIS

In this case, the trial court summarized the services offered as follows:

> During the two years that [petitioner] worked with [respondent and the children's father] in Ontonagon County, they were provided with parenting assistance, including Parent Aides, guidance on how to provide a proper physical home environment, physical care and needs, anger management, psychological needs assessment, general counseling services, Families First assistance, Friend of the Court SMILE program, Parenting Wisely programs. Additional services were also provided for the children, some of which [respondent] accepted, but others she refused (such as much needed therapy, Head Start and Early On preschool services for [GJ], assistance in obtaining dental services for [GJ] and psychological services for herself if medication was prescribed).

On appeal, respondent does not argue that she did not receive the services described by the trial court. Instead, she only challenges the fact that petitioner failed to provide additional services after the children were removed from her care for the second time.

At the hearing on the petition in connection with the second removal, a DHHS worker testified that "the historical issues that we have at hand with services being provided to [respondent include that] every effort that [petitioner] has been able to make has not been shown to [help respondent] be successful with parenting the [minor children] and, if anything, [respondent has been] destructive and plac[ed] them in unsafe situations." The caseworker also stated that she could describe the efforts that DHHS had made to correct respondent's parenting issues and the fact that those issues have "not been able to be resolved." She elaborated:

> Well, what's not in the Petition . . . is that there is also a lack of cooperation that we have observed with [respondent] over the last month. She has not . . . cooperated with the weekly counseling sessions and services that have been arranged . . . . She's also had an average of four missed appointments with . . . a parent aide, which is supposed to service [respondent] on a twice a week basis and has not; and she has missed appointments for last two to three weeks with [another] parent aid . . . .

The DHHS caseworker added that respondent's counselor had indicated that respondent "was showing frustration with the Department and did verbalize . . . a will or a desire not to cooperate." When respondent's counsel asked, "Is it possible to have any services implemented right now to--so that . . . there cannot be or will not be a suspended parenting time?," the DHHS caseworker responded, "Services through [petitioner] . . . from my knowledge at this point, [are] exhausted. We've given [respondent] everything that we can--or currently are giving [respondent] everything that we can, and I don't see any other way to implement any other services." At the termination hearing, the DHHS caseworker again confirmed that there were no further services that the agency could offer, and respondent had received all of services that the agency was capable of offering before the children were removed for a second time. Additionally, the trial court's order terminating parental rights reiterates these facts.

Although the trial court ordered that "[r]easonable efforts for reunification should be continued" after the second removal, the record demonstrates that petitioner had previously expended extensive efforts to achieve reunification and that services in addition to those already provided were not reasonable under the circumstances given respondent's lack of improvement from the previous efforts and the fact that petitioner had provided all of the services that it could offer. Although respondent asserts on appeal that she was steadily becoming a better parent throughout the proceedings, the record indicates otherwise. If a respondent fails to display improvement from services, and there is no basis for believing that additional services will be successful when the services already offered were ineffective, the logical conclusion is that additional services are not necessary under petitioner's obligation to expend reasonable efforts. Instead, it is apparent from the record that petitioner fulfilled its duty to make reasonable efforts toward reunification in this case, but respondent failed in her duty to participate in, or benefit

from, the services provided. See *In re Frey*, 297 Mich App at 248.[4] Thus, respondent has failed to demonstrate a plain error affecting her substantial rights.

## IV. CONSIDERATION OF RELATIVE PLACEMENT

Respondent argues that the trial court's conclusions regarding the children's best interests were deficient because the court failed to explicitly consider in its best-interests determination the option of continuing placement of the children with respondent's aunt and uncle. We agree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

This Court reviews for clear error a trial court's best-interest determination. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), citing MCR 3.977(K). "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted; alteration in original).

Generally, a child's placement with a relative weighs against termination and is "an explicit factor to consider in determining whether termination [is] in [a child's] best interests." *Id*. at 164, citing MCL 712A.19a(6)(a); see also *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). If the court fails to expressly address placement with a relative, the record is inadequate to make a best-interest determination, and reversal is required. *In re Olive/Metts*, 297 Mich App at 43.

## B. ANALYSIS

On appeal, respondent and petitioner agree that the trial court failed to expressly consider the children's placement with respondent's aunt and uncle during its best-interest determination. Likewise, although it is evident that the trial court was aware of the relative placement, as it mentioned in its factual findings that the children had been placed with respondent's aunt and uncle and appeared to be thriving in their care, the record does not indicate that the court explicitly considered the option of relative placement in determining whether termination was in

---

[4] Respondent relies on *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011), in which we noted that the petitioner "provided respondent numerous services each time the children were removed from care . . . ." As such, respondent contends that our statement established a rule that petitioner must recommence reunification services each time a child is removed from a parent's household. However, the context of the statement in *In re Plump* clearly indicates that we were merely observing that petitioner had, in fact, provided services after each removal in that case; we were not establishing or referencing a rule that services must be renewed with every removal in every case. Indeed, implicit in the requirement that petitioner must take "reasonable efforts" to achieve reunification is an understanding that what is reasonable will vary from case to case. Respondent's attempt to wring from *In re Plump* a firm rule requiring renewed services after each removal is misguided.

the children's best interests, or recognized that a placement with relatives would weigh against termination. Accordingly, we vacate the trial court's best-interest determination and remand this case for further proceedings on this issue.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, respondent asserts that her attorney provided ineffective assistance throughout the child protective proceedings. In particular, she argues that trial counsel was ineffective for failing to object to the trial court's initial exercise of jurisdiction, failing to seek additional reunification services, and failing to assert that the trial court must consider, under *In re Olive/Metts Minors*, the children's placement with relatives during its best-interest determination. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

"Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014); see also *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988). Our review of respondent's claims is limited to mistakes apparent on the record because she did not move for a new trial or *Ginther*[5] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that counsel provided ineffective assistance, a respondent must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) respondent was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288, 305 (2012) (quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984)). "A [respondent] must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed," and a respondent bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Likewise, a respondent "must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id.* at 411.

## B. ANALYSIS

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

First, as discussed *supra*, respondent's claims related to the trial court's initial exercise of jurisdiction, including her claim of ineffective assistance, should have been raised in a direct appeal from that decision, not in this claim of appeal from a later decision to terminate parental rights. See *In re Hatcher*, 443 Mich at 439-440; *In re SLH*, 277 Mich App at 668. As such, this claim of error, which is related to the trial court's exercise of jurisdiction at the adjudicative stage, may not be considered in this appeal. Nevertheless, the testimony in the record describing respondent's physical and emotional abuse of the children clearly demonstrates that there is not a reasonable probability that the outcome of the proceedings, in this case the trial court's exercise of jurisdiction over the children, would have been different but for counsel's alleged errors. See MCL 712A.2(b)(1), (2); *Vaughn*, 491 Mich at 669-671.

Second, we reject respondent's claim of ineffective assistance arising from counsel's failure to request additional services when the children were removed a second time. Counsel's failure to advocate a meritless position cannot constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As explained *supra*, petitioner was not required by law to renew services with each removal. Additionally, given the testimony indicating respondent's minimal compliance and benefit from the services that had been offered, such that petitioner's ability to facilitate reunification had been "exhausted," it is apparent that petitioner fulfilled its duty to make reasonable efforts toward reunification and that respondent failed to fulfill her duty to participate in and benefit from the services provided. Moreover, the record suggests that counsel had reason to believe that a continued provision of services could have resulted in an expansion of respondent's record of resisting, or otherwise failing to benefit from, the services. Accordingly, counsel may have refrained from requesting additional services in order to avoid drawing attention to his client's poor record in that regard. See *Petri*, 279 Mich App at 411 (noting the strong presumption that counsel's performance constituted sound trial strategy).

Lastly, we need not consider respondent's argument concerning her attorney's alleged failure to argue that the trial court was required, under *In re Olive/Metts Minors*, to explicitly consider the children's placement with relatives during its best-interest determination. Our decision to vacate the court's best-interest determination and remand for redetermination of the children's best interests obviates any need to consider whether a deficiency in counsel's performance also necessitates reconsideration of the best-interests determination. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues."). However, contrary to respondent's claims on appeal, the written closing argument prepared by respondent's counsel expressly reminded the trial court that a child's placement with relatives is a factor that the court needs to consider in determining a child's best interests.

## VI. CONCLUSION

For the reasons stated above, we remand this case to the trial court for redetermination of the children's best interests in accordance with *In re Olive/Metts*, 297 Mich App at 43, but otherwise reject respondent's claims of error.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan