# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON RONALD DINWIDDIE,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2015

No. 322751
Wayne Circuit Court
LC No. 14-001112-FC

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b.[1] Defendant was sentenced to 18 to 40 years' imprisonment for the armed robbery conviction, 5 to 10 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

On the evening of December 5, 2013, Juan Ramirez was working at Broadway Transmission in Detroit, where he was employed as a mechanic. Between 8:30 p.m. and 9:00 p.m., Ramirez walked out of Broadway Transmission, intending to walk to a gas station across the street. Immediately after exiting the shop, Ramirez was approached by two armed men. One of the men, whom Ramirez recognized as defendant,[2] held a shotgun or rifle to Ramirez's chin. The other man, identified only as "Dejuan" at trial, held a handgun to Ramirez's side.

Defendant told Ramirez to reenter Broadway Transmission so that they could take some money. Ramirez attempted to dissuade defendant from robbing the business, explaining to

---

[1] Defendant was also charged with, and acquitted of, assault with intent to commit murder, MCL 750.83.

[2] Ramirez testified that he had known defendant from the neighborhood for approximately one year.

defendant, "Man, you don't want to do this. I ain't got no money. I mean, I know your people. You don't want to do this." Ultimately, defendant and Dejuan relented, and Ramirez moved away from the men. However, as Ramirez walked quickly toward the gas station across the street, he was struck by a bullet, which shattered his right femur bone. Because his back was turned, he was not sure if defendant or Dejuan fired the weapon.

A witness to the shooting, Jerome Tolbert, identified defendant as the shooter. Just before the shooting, Tolbert was at the home of defendant's father, which is located five or six houses away from Broadway Transmission. As Tolbert was leaving, he observed defendant and Dejuan attempting to get Ramirez back inside Broadway Transmission. Tolbert saw Ramirez break free of the men and walk quickly toward the gas station. He then heard three gunshots, the last of which struck Ramirez. Tolbert stated that defendant shot Ramirez with a .22-caliber rifle. Tolbert immediately rendered aid to defendant and called 911, while defendant's father left the scene after picking up shell casings from the shooting.

After Ramirez was taken away in an ambulance, Tolbert returned to the home of defendant's father, where defendant and Dejuan were changing their clothes. When defendant's father came back to the residence, he instructed defendant to discard any guns that he had in the house, but defendant replied that he did not have any guns in the home.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel's questioning of Quintashia Sorrel, the mother of defendant's child, which revealed that defendant had threatened Sorrel in the past, constituted ineffective assistance of counsel. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

Our review of defendant's ineffective assistance of counsel claim is limited to mistakes apparent on the record because he did not move for a new trial or *Ginther*[3] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) defendant was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must also show that the result that did occur was fundamentally unfair or unreliable."

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed," and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Likewise, a "[d]efendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id*. at 411.

## B. APPLICATION

At trial, the prosecution called Sorrel to testify. Sorrel stated that defendant was supposed to visit her home on the evening of December 5, 2013, but never arrived. Defendant eventually came to Sorrel's home on December 7, 2013, at which time he told Sorrel that "he had messed up" because he shot a man who attempted to rob him near his parents' house. Sorrel later reported her conversation with defendant to the police.

On cross-examination, defense counsel questioned Sorrel regarding the manner in which the police contacted her concerning defendant's involvement in the shooting. Sorrel testified that she contacted the prosecutor's office directly in order to tell them about her conversation with defendant. Defense counsel then asked if Sorrell contacted the prosecutor's office because she thought she had information that the prosecution needed to know. Sorrel responded that she called the prosecutor's office because she felt threatened by defendant.

Defendant argues that this line of questioning—and the prosecutor's subsequent questioning on redirect examination—led the jury to infer that defendant had a propensity for violence and, therefore, increased the likelihood of the jury finding defendant guilty of the offenses against Ramirez. As such, defendant contends that defense counsel either purposefully elicited this testimony or was careless in asking a question to which he did not know the answer. We find no basis for such a conclusion in the record, and defendant identifies no evidence to support a theory that defense counsel intended to deliberately sabotage his client.

Rather, the record shows that defense counsel attempted to impeach Sorrel by demonstrating her bias against defendant. See *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001) ("[E]vidence of bias is almost always relevant." [Quotation marks and citation omitted.]). Although this strategy prompted testimony that Sorrel felt threatened by defendant, it also elicited testimony indicating that Sorrel's relationship with defendant was "dysfunctional" and "strained emotionally[] [and] mentally." Further, defense counsel's questioning of Sorrel prompted her to concede that defendant was already in police custody—and, therefore, was incapable of harming her—when she called the prosecutor's office. Thus, while defense counsel's line of questioning may have elicited damaging testimony, it is clear from the record that defense counsel still succeeded in revealing Sorrel's bias toward defendant and discrediting her claim that she legitimately felt threatened by defendant.

Thus, defendant has failed to rebut the "strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich App at 411. Furthermore, given the eyewitness testimony presented at trial, there is not a reasonable probability that the outcome of the trial would have been different but for defense counsel's alleged error. *Vaughn*, 491 Mich at 669-671.

## III. OFFENSE VARIABLE SCORING

Defendant next argues that the trial court erroneously assessed 15 points for offense variable ("OV") 10 and 10 points for OV 14. We disagree.

## A. STANDARD OF REVIEW

Defendant preserved his challenges to OV 10 and OV 14 by objecting at the sentencing hearing. See MCL 769.34(10); *People v Jackson*, 487 Mich 783, 796; 790 NW2d 340 (2010). Accordingly,

> the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes omitted).]

## B. OV 10

When scoring OV 10, the trial court must examine whether the defendant engaged in the exploitation of a vulnerable victim while committing the crime. MCL 777.40; *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008). MCL 777.40(1)(a) provides that the trial court shall assess 15 points under OV 10 if it finds that "[p]redatory conduct was involved." At the time of sentencing, MCL 777.40(3)(a) defined "predatory conduct" as "preoffense conduct directed at a victim for the primary purpose of victimization."[4] Stated differently, " '[p]redatory conduct' under the statute is behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *Cannon*, 481 Mich at 161.

Fifteen points is properly assessed only for "those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), quoting *Cannon*, 481 Mich at 162. Additionally, the Michigan Supreme Court has stated that "the defendant's preoffense conduct only has to be directed at 'a victim,' not any specific victim, and the victim does not have to be inherently vulnerable. Instead, a defendant's 'predatory conduct,' by that conduct alone (*eo ipso*), can create or enhance a victim's 'vulnerability.' " *Id*. at 454. "The timing of an offense, including watching the victim and waiting until the victim is alone before victimizing him or her, may be evidence of predatory conduct." *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013).

---

[4] MCL 777.40(3)(a) was amended by 2014 PA 350, effective October 17, 2014, but the amendment is not relevant to the instant appeal.

Here, a preponderance of evidence supported the trial court's finding that defendant engaged in behavior that qualified as predatory conduct under MCL 777.40. Ramirez testified that he was alone at work at approximately 8:30 or 9:00 p.m., which was after normal business hours. Because defendant knew Ramirez, and defendant's father lived only a few houses away, it is reasonable to infer that defendant was aware that Ramirez was at the business and knew that it was likely that he would be alone at that late hour. See *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003) (stating that inferences from the evidence presented at trial supported the trial court's assessment of 15 points for OV 10). Likewise, Ramirez testified that the men "approached [him] right around the corner of the building" "[a]s soon as [he] came out of the building," which indicates that defendant was lying in wait, while armed, for Ramirez to exit. Most significantly, Ramirez did not testify that defendant and his accomplice demanded money or valuables that Ramirez had on his person; Ramirez testified that defendant initially insisted that Ramirez go back inside Broadway Transmission so that they could retrieve some money. This statement indicates that defendant engaged in preoffense conduct with the intent to victimize Ramirez based on his connection to Broadway Transmission, which, according to the stated beliefs of defendant and his accomplice, had money inside. See MCL 777.40(3)(a) (stating that predatory conduct must have "the primary purpose of victimization"). Thus, by waiting until Ramirez was alone late at night outside of Broadway Transmission, defendant was able to exploit and enhance Ramirez's vulnerability. See *Huston*, 489 Mich at 454. Thus, the evidence presented at trial supported an assessment of 15 points for OV 10.

## C. OV 14

OV 14 is scored based on the defendant's role in the offense. MCL 777.44. A trial court shall assess 10 points if the defendant "was a leader in a multiple offender situation" and zero points if the defendant was not a leader. MCL 777.44(1)(a)-(b). MCL 777.44(2)(a) instructs the trial court to consider the entire criminal transaction when scoring OV 14. *People v Apgar*, 264 Mich App 321, 330; 690 NW2d 312 (2004). We previously recognized the following definitions of "leader" and "lead" for purposes of MCL 777.44: "[A] 'leader' is defined in relevant part as 'a person or thing that leads' or 'a guiding or directing head, as of an army or political group.' To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014). Evidence indicating that a defendant acted first, provided directions, or exhibited greater initiative may demonstrate that the defendant was a leader. See *id*.

A preponderance of evidence supports the trial court's finding that defendant was the leader of the robbery and assault against Ramirez. Ramirez testified that defendant was the offender who placed the weapon under his chin and spoke first, demanding that Ramirez go back inside Broadway Transmission to retrieve money. Additionally, Ramirez stated that he knew defendant, but not the accomplice, which supports an inference that defendant was the one who devised the plan to rob and assault Ramirez. Likewise, when Ramirez begged to be released, he addressed defendant, not the other man, indicating that Ramirez perceived defendant to be the leader of the offense and the individual who could stop its commission. Additionally, Tolbert

testified that defendant was the perpetrator who fired the gunshot that struck Ramirez. Thus, the trial court did not err in assessing 10 points for OV 14.[5]

## IV. CONCLUSION

Defendant has failed to demonstrate that defense counsel provided ineffective assistance. Likewise, he has failed to establish that the trial court erroneously scored the sentencing guidelines.

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

---

[5] We acknowledge that defendant filed a statement of supplemental authority after filing his brief on appeal, which states, in its entirety, "Defendant-Appellant Dinwiddie calls the Court's attention, relative to his Argument II in the brief on appeal, the recent case of *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015)." In *Lockridge*, the Michigan Supreme Court recently held that Michigan's sentencing guidelines are unconstitutional to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *People v Lockridge*, 498 Mich 358, 364; ___ NW2d ___ (2015).

To the extent that defendant intended to raise a claim on *Lockridge* grounds, he was not permitted to do so through a filing of supplemental authority. See MCR 7.212(F)(1) (stating that a communication of "supplemental authority" "may not raise new issues"). Furthermore, defendant has abandoned any argument that he intended to advance through the brief statement in his supplemental authority, as he failed to provide any discussion regarding the application of the new authority to the issues raised on appeal. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."); *Thompson v Thompson*, 261 Mich App 353, 356; 683 NW2d 250 (2004) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). See also MCR 7.212(F)(2) (stating that supplemental authority "may only discuss how the new authority applies to the case"). Further, a trial court is still required to calculate and consider the sentencing guidelines when imposing a sentence, *Lockridge*, 498 Mich at 365, and *Lockridge* "[did] nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not," *id.* at 392 n 28.

Thus, we will not consider the effect of *Lockridge* in this case.