PEOPLE v PETRI

Docket No. 275019. Submitted May 6, 2008, at Lansing. Decided May 15, 2008. Approved for publication June 26, 2008, at 9:05 a.m. Leave to appeal sought.

Mark R. Petri was convicted by a jury in the Livingston Circuit Court, Stanley J. Latreille, J., of second-degree criminal sexual conduct (CSC), MCL 520c(1)(a), and was sentenced as a second-offense habitual offender to imprisonment for a minimum of 14 years and 10 months and a maximum of 22½ years. The defendant appealed his conviction and sentence.

The Court of Appeals *held*:

1. The defendant was not denied the effective assistance of counsel. First, although defense counsel did not object on the record to the admission of the defendant's two previous convictions of second-degree CSC involving minors, the trial court clearly considered the evidence admissible under MCL 768.27a, and stated that its probative value outweighed the danger of unfair prejudice. Accordingly, it is not reasonably probable that an objection would have made a difference in the outcome. Second, defense counsel was not ineffective for failing to adequately cross-examine a detective regarding an incident involving the defendant's alleged presence at a day-care center. Defense counsel objected to the admission of the evidence and later established that the defendant had an alibi for this incident. Third, stipulating the admission of unredacted copies of the defendant's prior convictions, which included the information that he was on probation and not permitted to have contact with children under 16 years old, was not ineffective assistance. The jury was instructed not to consider the possible penalty for these crimes, and the decision to allow the jury to see the entire judgment of sentence was evidently a strategy to avoid allowing the jury to speculate about the defendant's conviction or the terms of his probation. Finally, defense counsel was not ineffective for failing to object to a detective's testimony that his decision to investigate the defendant stemmed from concerns that he may have been "grooming" the victim for more intense sexual contact in the future. This testimony did not require the detective's qualification as an expert; the

detective would have qualified even if it had, and there is no reasonable probability that this brief testimony affected the outcome of the trial.

2. The trial court did not err by denying the defendant's motion to disqualify the prosecutor on the ground that she was a necessary witness. Granting the defendant's untimely motion would have caused hardship to the prosecution, and the defendant did not establish that the prosecutor was a necessary witness by showing that no other witness could bring forth the information at issue.

3. The defendant has not established a sufficient basis for disturbing the trial court's determination that substantial and compelling reasons existed to depart from the sentencing guidelines recommended minimum sentence range. Although the trial court's reason for departure reflects some of the considerations already taken into account by the guidelines, the trial court determined that the guidelines failed to adequately consider the similar nature of the defendant's pattern of felony crimes.

4. The defendant is not entitled to resentencing under *Blakely v Washington*, 542 US 296 (2004), because that case does not apply to Michigan's indeterminate sentencing scheme.

Affirmed

TRIAL — WITNESSES — ATTORNEY WITNESSES.

A prosecuting attorney who has interviewed a crime victim need not be disqualified on the ground that he or she is a necessary witness at trial if other witnesses can bring forth the information at issue or if granting an untimely motion for disqualification would result in hardship for the prosecution (MRPC 3.7[a]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David L. Morse*, Prosecuting Attorney, and *William J. Vailliencourt, Jr.*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Brandy Y. Robinson*) for the defendant.

Before: WILDER, P.J., and O'CONNELL and WHITBECK, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of second-degree criminal sexual conduct, MCL 750.520c(1)(a) (sexual contact with a person under 13), and was sentenced as a second-offense habitual offender, MCL 769.10, to imprisonment for a minimum of 14 years and 10 months and a maximum of 22½ years. He appeals of right. We affirm.

I

The victim and her parents met defendant on July 5, 2005, during a family outing. Defendant then began arriving at the victim's house for breakfast when her father was leaving for work. Defendant was usually around the victim and her siblings during his visits, on one occasion jumping into bed with the victim and tickling her to wake her up. On more than one occasion he pinched the victim's bottom while they were swimming in a lake.

The incident that led to defendant's conviction occurred on July 14, 2005, while the victim's mother and defendant were helping a friend move to a new residence. The victim and a younger sister rode with defendant in his truck. The victim was seated next to defendant in the front passenger seat, while her sister sat behind them. Defendant stopped at a gas station and bought a bottle of Mountain Dew. After returning to the truck, defendant, while giving the 12-year-old victim a strange smile, used the bottle to open the victim's closed legs and then pushed it up her jean skort (a skirt with shorts stitched underneath) so that the bottle cap touched the clothing covering her genital area. The victim waited a few minutes before removing the bottle. She later told her sister and mother what defendant did with the bottle. The victim's mother reported the incident to the Livingston County Sheriff's

Department, which investigated. During an interview conducted by Detective Scott Domine after his arrest, defendant denied that he was ever left alone with the victim and her sister.

II

Defendant now argues that he was denied the effective assistance of counsel at trial because trial counsel failed to raise several evidentiary objections. Because defendant did not move for a new trial or *Ginther*[1] hearing, our review is limited to mistakes apparent on the record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

A defendant has waived the issue if the record on appeal does not support the defendant's assignments of error. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). A claim of ineffective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo. *Id.*

Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise. *LeBlanc, supra* at 578. To succeed on a claim of ineffective assistance of counsel, the defendant must show that, but for an error by counsel, the result of the proceedings would have been different, and that the proceedings were fundamentally unfair or unreliable. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). The defendant bears a "heavy burden" on these points. *People v Carbin*, 463 Mich 590, 599; 623 NW2d 884

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2001). Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

Defendant first argues that defense counsel was ineffective for failing to challenge the admissibility of evidence of his two prior convictions for second-degree criminal sexual conduct under MRE 404(b), which limits the admission of a defendant's other crimes, wrongs, or acts. We disagree. The admissibility of the evidence did not depend on MRE 404(b), because the prosecutor also relied on MCL 768.27a as authority to admit it. When a defendant is charged with second-degree criminal sexual conduct against a minor, evidence that the defendant committed another crime of second-degree criminal sexual conduct against a minor may be admitted under MCL 768.27a, independent of MRE 404(b), even if there was no conviction for the other crime. See *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007). The evidence "may be considered for its bearing on any matter to which it is relevant." MCL 768.27a. A defendant's propensity to commit criminal sexual behavior can be relevant and admissible under the statutory rule to demonstrate the likelihood of the defendant committing criminal sexual behavior toward another minor. *Pattison, supra* at 619-620.

The trial court's remarks at trial indicate that there were off-the-record discussions with the prosecutor and defense counsel regarding the admissibility of defendant's two prior convictions of second-degree criminal

sexual conduct involving minors. Although defense counsel did not object to the evidence on the record, it is clear from the trial court's remarks that it considered the evidence admissible under MCL 768.27a. The trial court also applied MRE 403, stating that the probative value of such evidence "vastly outweighs" the prejudicial value, calling for its admission. Defendant has failed to show that an on-the-record objection by defense counsel, based on either MRE 404(b) or MCL 768.27a, would have caused the trial court to exclude the evidence.

Further, we agree with the prosecution's argument that the evidence was used by the defense. Defense counsel suggested to the jury in closing argument that the discovery of defendant's status as a convicted sex offender caused the victim's mother to perceive defendant's innocent conduct as a sexual assault. Defense counsel argued that the victim's mother was "in the front lines" of what happened, and concluded his closing argument by suggesting, "It's easy to—to point the finger at him and to agree that what he did was shameful—his past is shameful. . . . It's so dangerous in this case because of his past. That you would overlook something that was otherwise innocent that became something else, but I think that's exactly what happened in this case."

Defendant has failed to overcome the presumption that defense counsel engaged in sound trial strategy by not making an on-the-record objection to evidence that was ultimately used by the defense. Defense counsel stipulated the admission of a certified copy of the convictions during the victim's mother's testimony regarding information that she acquired from defendant about him being a registered sex offender. A failed strategy does not constitute deficient performance.

*People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). In any event, defendant's claim of ineffective assistance of counsel on this ground cannot succeed because there is no reasonable probability that an objection would have made a difference in the outcome.

Defendant also argues that defense counsel was ineffective by not adequately cross-examining Detective Domine to dispel any suspicion that defendant was involved in "scoping out" a day-care center. Because defendant has not supported his argument with citations to the record, as required by MCR 7.212(C)(7), we need not consider this argument. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Norman*, 184 Mich App 255, 260; 457 NW2d 136 (1990). But even if we were to overlook this deficiency, appellate relief on this ground would not be warranted.

The questioning of witnesses is presumed to be a matter of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Here, defense counsel made an initial hearsay objection to the victim's mother giving testimony regarding what a friend told her about an incident at a day-care center in Pinckney. The trial court overruled the objection, because the prosecutor was not offering the evidence for a substantive purpose (to prove the truth of the matter asserted), but rather to show how the information affected the victim's mother. The prosecutor was cautioned not to suggest that defendant committed the act, and the prosecutor responded by using leading questions to question the victim's mother. The victim's mother testified that information about the day-care incident caused her to contact defendant's probation agent, who told her to contact Detective Domine, which in turn led her to

report the incident involving the victim to Detective Domine. Defense counsel later elicited testimony from Detective Domine that he received information from the Pinckney Police Department that defendant had an alibi for the day-care-center incident.

Defendant's argument is cursory. And we are not persuaded that defense counsel's failure to further cross-examine Detective Domine on the fact that defendant was not linked to the day-care incident, or to emphasize the matter more strongly to the jury, constituted deficient performance or caused the requisite prejudice. This is especially true given that defense counsel established that defendant had an alibi for the incident.

Defendant next argues that defense counsel was ineffective for stipulating the admission of a certified copy of his prior convictions. Defendant argues that a simple verbal stipulation would have been sufficient to inform the jury about the prior convictions. Alternatively, defendant argues that defense counsel should have requested that the documents be redacted to exclude information that he was sentenced to probation and was not allowed to have unsupervised contact with children under 16 years of age. Limiting our review to the record, defendant has not met his burden of showing either deficient performance or prejudice.

Although we agree that penalty is not an appropriate consideration for the jury, the jury was instructed that "[p]ossible penalty should not influence your decision." Jurors are presumed to follow instructions, and instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Further, there is no evidence that the jury was informed of the possible penalty; it was only informed of the sentences that defendant received for prior crimes.

Considering that the victim's mother testified that she spoke with defendant's probation agent, the jury could have reasonably inferred that defendant was on probation, regardless of the content of the exhibit. Defense counsel evidently made a strategic decision to have the jury see the entire judgment of sentence, rather than risk the jury speculating about the applicable conviction for the probationary sentence or the terms of probation. The information that defendant was not permitted to have unsupervised contact with children was consistent with defense counsel's closing argument that it did not make sense that defendant would take the children into his truck and assault one of them.

And while the prosecutor used this information in her closing argument to suggest that defendant lied to Detective Domine, because of concern that his probation would be revoked if he told the truth, we are not persuaded that the argument was improper. That our rules of evidence preclude the use of evidence for one purpose does not render the evidence inadmissible for other purposes. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Therefore, we reject defendant's claim that defense counsel was ineffective by not objecting to the prosecutor's argument. Counsel need not make a futile objection. *Rodgers, supra* at 715.

Finally, defendant argues that defense counsel was ineffective for failing to object to Detective Domine's testimony about "grooming." We disagree. Detective Domine did not testify that defendant engaged in "grooming"; only that he was concerned that there might have been grooming going on, based on what he was told by the victim's mother, and that this was a factor in his decision to go forward with an investigation and prosecution. Although Detective Domine also

provided a definition of "grooming," we reject defendant's position that the definition required expert testimony.

In *People v Ackerman*, 257 Mich App 434, 443-445; 669 NW2d 818 (2003), this Court upheld the admissibility of a psychotherapist's expert testimony about patterns of behavior exhibited by child sex abusers. Unlike in *Ackerman*, Detective Domine was attempting to explain his decision to move forward with an investigation. Detective Domine did not testify regarding typical patterns of behavior, but only described a process in his definition of "grooming" where "you start with small things with children and they progress to greater things. Touching can progress to more intense sexual contact later on."

Because there is no indication that Detective Domine was offering a technical or scientific analysis of the behavior of child sex abusers, it was not necessary that the prosecutor qualify Detective Domine as an expert. Cf., e.g., *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003) (lay opinion admissible under MRE 701 where it was largely based on common sense and did not involve highly specialized knowledge).

Even assuming that it was necessary that Detective Domine be qualified as an expert witness to give his brief testimony regarding "grooming," any error was harmless, because Detective Domaine would have qualified. Detective Domine testified that he had 15 years of experience with the Livingston County Sheriff's Department, and received training in the forensic interviewing of children. A police witness can be qualified as an expert on the basis of experience or training in child sexual abuse cases. MRE 702; *People v Dobek*, 274 Mich App 58, 76-79; 732 NW2d 546 (2007). In any event, we conclude that expert testimony was not necessary to

assist the jury in evaluating the evidence of the events leading up to the July 14, 2005, incident underlying the charge. Finally, because no reasonable probability exists that Detective Domine's brief testimony regarding "grooming" affected the outcome of the trial, defendant's claim of ineffective assistance of counsel fails.

III

Defendant next argues that the trial court erred by denying his motion to disqualify the prosecutor from trying the case on the ground that she had interviewed the victim and was therefore a necessary witness. We review the trial court's findings of fact for clear error and its application of the law to the facts de novo. *People v Tesen*, 276 Mich App 134, 141; 739 NW2d 689 (2007). A defendant seeking to disqualify a prosecutor as a necessary witness bears the burden of proof. *Id*. at 144. A prosecutor is not a necessary witness if the substance of the testimony can be elicited from other witnesses, and the party seeking disqualification did not previously state an intent to call the prosecutor as a witness. *Id.*

Michigan lawyers are governed by the Michigan Rules of Professional Conduct (MRPC), under which a lawyer generally cannot simultaneously be a witness and an advocate at trial. MRPC 3.7(a) provides:

> *A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness* except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client. [Emphasis added.]

In *Tesen*, a prosecutor, in investigating a complaint that the defendant sexually abused his son, took a lead role by conducting a forensic interview of the son[2] while other team members observed all or part of the interview. *Tesen, supra* at 135-136. The next day, the prosecutor authorized a warrant charging the defendant with first-degree criminal sexual conduct and other charges. *Id.* at 136. The defendant moved to disqualify the prosecutor before the preliminary examination, asserting that he reasonably intended to call him as a witness. *Id.* The district court denied the motion, but the circuit court later granted a defense motion to disqualify the prosecutor. *Id.* at 139. This Court affirmed the disqualification order, finding no clear error in the circuit court's determination that the prosecutor was likely to be a necessary witness at trial. *Id.* at 135.

We find *Tesen* distinguishable, because here defendant did not make a timely demand to disqualify the prosecutor, nor did he demonstrate that the prosecutor would be a necessary witness at trial. The issue was first raised at defendant's preliminary examination. Defense counsel acknowledged that the prosecutor was a highly qualified, trained forensic interviewer, and that another trained forensic interviewer also observed the interview. The district court did not disqualify the prosecutor, but indicated that its decision could change, and that defense counsel would have a right to cross-examine the prosecutor if there was information that only she possessed. Any notes of the interview of the victim were to be given to defense counsel.

Ultimately, only the victim and her mother testified at the preliminary examination. After defendant was

---

[2] The goal of the forensic interview was to obtain a statement from the child "in a developmentally sensitive, unbiased, and truth-seeking manner" to support accurate and fair decision-making. *Tesen, supra* at 136.

bound over for trial in the circuit court, defendant's counsel withdrew. Much later, substitute counsel filed a motion to disqualify the prosecutor. The prosecutor filed a response that, among other things, challenged defense counsel's claim that no hardship would result if she were disqualified. The trial court denied the motion, ruling that the prosecutor was not a necessary witness because other witnesses could bring forth the information at issue, and ruling that, because the motion was on the eve of trial, granting the motion would be prejudicial to the prosecution.

We affirm the trial court's reasoning. The trial court appropriately questioned the timeliness of the motion. "[T]he timeliness of the motion may be considered in determining the likelihood that the defendant's motion is made in good faith and not just for the purpose of gaining a tactical advantage." *People v Paperno*, 54 NY2d 294, 303; 429 NE2d 797; 445 NYS2d 119 (1981). It can cause a hardship by disqualifying the prosecutor most familiar with the case and requiring duplicative work by a substitute prosecutor. *United States v Johnston*, 690 F2d 638, 645 (CA 7, 1982).

Further, we agree with the trial court's determination that defense counsel failed to establish that the prosecutor was a necessary witness. Although given an opportunity to identify a particular issue on which the prosecutor would be a necessary witness, the gist of defense counsel's argument was that any prosecutor should be automatically disqualified if he or she becomes part of an interview team or conducts a forensic interview. Because defense counsel failed to offer any particularized basis for concluding that the prosecutor's testimony would be material to the defense, we uphold the trial court's denial of the motion to disqualify.

The trial court's decision did not deprive defendant of a substantial defense. Defense counsel presented evidence at trial regarding the prosecutor's interview through his cross-examination of Detective Domine. Defendant has not identified any issue that actually arose at trial, or was raised by defense counsel on the basis of the trial evidence, that demonstrates a need for the prosecutor's testimony to support the defense. The right to present a defense may be limited by rules of procedure and evidence designed to ensure fairness and reliability. *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000). Because we find no error in the trial court's ruling not to disqualify the prosecutor, and defendant has not demonstrated that he was deprived of his right to present a substantial defense at trial, reversal is denied.

IV

Next, defendant seeks to set aside his minimum sentence of 14 years and 10 months.[3] Defendant argues that the trial court erred by imposing a minimum sentence of 178 months, a 71-month (about a six-year) departure from the sentencing guidelines recommended range of 43 to 107 months for the minimum sentence. As explained in *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007):

> In reviewing a trial court's grounds for departing from the sentencing guidelines, this Court reviews for clear error the trial court's factual finding that a particular factor in support of departure exists. *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). However, whether

---

[3] Although it appears that the trial court intended to impose the statutory maximum sentence of 15 years, the trial court was dissuaded from doing so by the prosecutor's erroneous calculation that two-thirds of the 22½ year maximum was 14 years and 10 months.

the factor is objective and verifiable is a question of law that this Court reviews de novo. *Id.* Finally, this Court reviews for an abuse of discretion the trial court's determination that the objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence. *Id.* at 264-265. A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes. *Id.* at 269.

The guidelines range was based on a score of 60 total prior record variable (PRV) points and 45 total offense variable (OV) points. A score of 50 points for PRV 1 reflected that defendant had two prior high-severity felony convictions, MCL 777.51(1)(b), and a score of 10 points for PRV 6 reflected that defendant was on probation, MCL 777.56(1)(c). A score of 10 points each for OV 4 and OV 10 reflected that the victim suffered serious psychological injury requiring professional treatment, MCL 777.34(1)(a), and that defendant exploited the victim's youth, MCL 777.40(1)(b). Finally, the score of 25 points for OV 13 reflected that the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(b).

We agree with defendant that the trial court's reason for departure reflects some of the characteristics already considered in OV 13 and PRV 1. But this is not necessarily fatal to the minimum sentence imposed. A trial court "shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range *unless the court finds from the facts contained in the court record . . . that the characteristic has been given inadequate or disproportionate weight.*" MCL 769.34(3)(b) (emphasis added). Here, the trial court's determination that the guidelines failed to adequately consider the similar nature of defendant's pattern of

felony crimes, and the aggravating circumstances, satisfied the exceptions permitted by statute.

The requirement that the trial court base its decision on objective and verifiable facts—i.e., actions and occurrences external to the minds of those involved in the decision and capable of being confirmed, *People v Abramski*, 257 Mich App 71, 74; 665 NW2d 501 (2003)—did not preclude the court from drawing inferences about defendant's behavior from objective evidence. For instance, in *People v Claypool*, 470 Mich 715, 718; 684 NW2d 278 (2004), our Supreme Court determined that if it could be objectively and verifiably shown that police conduct or some other precipitating cause altered a defendant's intent, the altered intent could be considered by a sentencing judge as a basis for a downward departure. Here, while the trial court described defendant's conduct as "grooming" and "stalking," it reached these conclusions on the basis of objective evidence that defendant arrived at the victim's home after her father left the home, that defendant crawled into her bed, and that defendant pinched the victim when they were swimming. The trial court drew reasonable conclusions about defendant's actual behavior to depart from the guidelines, and we find no error in its consideration of these aggravating circumstances as a basis for exceeding the guidelines range.

We are also satisfied that the trial court's observations regarding the reversal of convictions of first-degree criminal sexual conduct in another case did not affect its decision to depart from the guidelines range, nor did it affect the extent of the departure. We find no support for defendant's suggestion that the trial court improperly assumed that he committed the prior offenses. Examined in context, the trial court's remarks indicate only that it was summarizing defendant's criminal history. Therefore, resentencing on this ground is not warranted. *Babcock, supra* at 271-272.

In sum, defendant has not established sufficient basis for disturbing the trial court's determination that substantial and compelling reasons existed to depart from the guidelines recommended range for the minimum sentence. Further, the degree of departure was not an abuse of discretion. To be sure, this case presented a difficult sentencing decision. But we conclude that a minimum sentence of 178 months is within the range of reasonable and principled outcomes. *Babcock, supra* at 268-269; *Young, supra* at 448. The sentence is proportionate to the seriousness of defendant's crimes, past and present. *Babcock, supra* at 262.

V

Finally, defendant argues that he is entitled to resentencing, because the trial court enhanced the sentence on the basis of facts neither admitted by defendant nor proven to a jury beyond a reasonable doubt. Defendant relies on the Due Process Clause, as well as the Fourth and Sixth amendments of the United States Constitution. We disagree.

Defendant relies on *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), contending that the trial court erred by relying on facts not found by the jury when scoring the sentencing guidelines. But defendant concedes that he did not preserve his argument. In any event, defendant's argument lacks merit, because *Blakely* does not apply to Michigan's indeterminate sentencing regime. See *People v McCuller*, 479 Mich 672, 694-695; 739 NW2d 563 (2007).

VI

The trial court did not infringe defendant's constitutional right to the effective assistance of counsel. The

trial court did not abuse its discretion in denying defendant's eleventh-hour motion to disqualify the prosecutor. The trial court did not abuse its discretion in imposing a minimum sentence in excess of the range recommended by the statutory sentencing guidelines, and did not impose a disproportionate sentence. Finally, the trial court's sentence did not violate defendant's federal Sixth Amendment rights.

Affirmed.