# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FRANK TURNER, also known as FRANK NICOLAS TURNER,

Defendant-Appellant.

UNPUBLISHED
February 16, 2016

No. 320895
Wayne Circuit Court
LC No. 13-008535-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TION TURNER,

Defendant-Appellant.

No. 323966
Wayne Circuit Court
LC No. 13-008535-FC

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

These consolidated appeals arise from the convictions of defendants Frank Turner and Tion Turner following a joint bench trial on February 13, 2014. In Docket No. 320895, Frank appeals as of right his convictions of torture, MCL 750.85, unlawful imprisonment, MCL 750.349b, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court acquitted Frank of armed robbery, MCL 750.529, and assault with intent to maim, MCL 750.86. Frank was sentenced to 18 to 30 years' imprisonment for torture, 4 to 15 years' imprisonment for unlawful imprisonment, 1 to 4 years' imprisonment for felonious assault, and 2 years' imprisonment for felony-firearm. Frank's felony-firearm sentence runs consecutive to his other sentences, which run concurrent to each other.

In Docket No. 323966, Tion appeals by delayed leave granted[1] his bench trial convictions of unlawful imprisonment, MCL 750.349b, felonious assault, MCL 750.82, and felony-firearm, MCL 750.227b. The trial court acquitted Tion of armed robbery, MCL 750.529, torture, MCL 750.85, and assault with intent to maim, MCL 750.86. The court sentenced Tion to 5 to 15 years' imprisonment for unlawful imprisonment, 1 to 4 years' imprisonment for felonious assault, and 2 years' imprisonment for felony-firearm. The felony-firearm sentence runs consecutive to the other sentences, which run concurrent to each other.

For the reasons set forth in this opinion, in Docket No. 320895, we affirm Frank's convictions, vacate his sentence for torture and remand for resentencing on that offense and also remand for correction of the presentence investigation report (PSIR) and for adjustment of credit for time served. In Docket No. 323966, we affirm Tion's convictions and sentences in their entirety.

## A. FACTS

This case arises from a series of crimes committed against the victim, Dontez Boykins, at 20015 Riopelle Street, Detroit, Michigan, in the early morning hours of August 19, 2013. Boykins testified that on August 18, 2013, he was at the house with some people including Frank and Tion, who are brothers. The victim's friend, Richard Allen, lived at the house. Two other persons involved in the events are known only by their street names of "Tae-Tae" and "Fat Boy."

Boykins testified that at some point on August 18, 2013, he and Tion were sitting on the living room couch at the home when Tion asked him if he had some money and how much money he had. The victim asked, "[W]hy, what's up[?]" or "[W]hy, what's going on, what you needs [sic]?" Tion responded, "[Y]ou ain't getting no money." The victim testified that Frank got a gun from Allen and fired a shot at him but missed. Frank then began to beat the victim by hitting him in the head with the gun multiple times; Tion also hit the victim and stood in the room pointing a handgun at the victim. At some point, Frank asked the victim what he said earlier to Tion that was "smart." After about 30 minutes of the beating, Tae-Tae and Fat Boy came to the house. Frank told Tae-Tae, "[G]et this n-----, his mouth smart, and get this n----." Tae-Tae and Fat Boy then hit the victim with their hands for approximately 20 minutes, as Tion pointed a gun at him.

At some point after Tae-Tae and Fat Boy arrived, Frank forced the victim to remove his clothes while Tion held the victim at gunpoint and Tae-Tae beat the victim for an additional 20 minutes. At this point, the victim was badly beaten, on his knees, naked, and losing blood. The victim saw through a crack in the door that Allen passed a clothes iron to Frank. Frank then passed the iron to Tae-Tae, who plugged the iron in; Frank and Tae-Tae said they would let the iron heat up. Frank, Tion, Tae-Tae, and Fat Boy then continued to beat the victim while the iron warmed up. After the iron heated up for about 10 minutes, Tae-Tae said, "[L]et's burn his d--- off[.]" Frank told the victim to stand up, and the victim complied. Tae-Tae then tried to use the

---

[1] *People v Tion Turner*, unpublished order of the Court of Appeals, entered March 11, 2015 (Docket No. 323966).

iron to burn the victim's penis, but he jumped out of the way as they tried to burn him. The iron burned the victim's genitals, face, arm, chest, buttocks, and legs. Frank pointed Allen's gun at the victim, Tion was holding his gun, and Fat Boy and Tae-Tae were tussling with the victim to hold him down so they could burn him with the iron. Fat Boy held the victim down as Tae-Tae burned him with the iron.

Eventually, Fat Boy and Tae-Tae left and Frank went to get gasoline to burn down the home of the victim's mother. While Frank was gone, Boykins managed to escape from the house and run to a Rite Aid store where he went in and spoke with employees. Video and still images of the victim inside the Rite Aid talking to the employees were admitted as exhibits. The Rite Aid employees called 911 and put the victim in a back room of the store for safety. Police and an ambulance arrived at the Rite Aid and he was taken by ambulance to the hospital. Boykins testified that he was in the hospital for three weeks where he was treated for burns and underwent skins grafts. Photographs of burns to his buttocks and legs were admitted into evidence. The victim also had burns to his arm, underarm, and genitals. He has permanent scars and pain and testified that he has "no clue" why this incident happened. Defendants were convicted and sentenced as set forth above. These appeals ensued.

## B. ANALYSIS

## I. DOCKET NO. 320895

### i. Ineffective Assistance of Counsel

Frank first argues that he was denied the effective assistance of counsel with respect to his counsel's closing argument.

Because the issue is unpreserved, our review is for mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich App at 411.

Frank challenges the following portions of his counsel's closing argument:

Frank Turner from the testimony of Mr. Boykin[s], is the one that saved his life, if you draw some assumptions in here, because Frank Turner is the one that put out Tae-[T]ae and Fat Boy, is the one that told Tae-[T]ae and Fat Boy you guys gotta' go, you're either too loud or whatever. And in essence saved the life of Mr. Boykins, if you believe that that's what happened.

\* \* \*

We do know that Frank, according to Mr. Boykins, that Frank is the one who decided, that stopped them from doing more.

-3-

* * *

We do know that he was, he was tortured, I have no problem with that, you can't get around that. And we do know that Tae-[T]ae and, and Fat Boy were the ones that were involved in that. We do know that Frank is the one that decided that he is not going, that he's not going to let it go any further than that.

* * *

[W]e do know that young Frank Turner, he's the one that stopped it. In a lot of ways he's a hero in this thing . . . he did save what looked like something more serious was going to be done to Mr. Boykins.

According to Frank, trial counsel improperly conceded that the victim was tortured and that Frank was involved in the torture. Frank asserts that his counsel presented an improper nullification argument by contending that Frank did not allow two other participants in the crimes, known only by the names of Tae-Tae and Fat Boy, to go any further.

Decisions regarding what arguments to make in closing are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's performance with the benefit of hindsight. *Petri*, 279 Mich App at 411. Moreover, the fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

Frank's contention that his counsel improperly conceded that Frank was guilty of torture, the most serious offense that he faced, is not supported by the record. As the above excerpt reflects, Frank's counsel merely acknowledged that a torture occurred but did *not* concede that Frank committed the offense. Overwhelming evidence of torture included the medical records, photographs, and testimony of independent witnesses. It was therefore a reasonable trial tactic for Frank's counsel to concede the obvious, i.e., that a torture occurred. See *People v Wise*, 134 Mich App 82, 98-99; 351 NW2d 255 (1984), quoting *United States v Trapnell*, 638 F2d 1016 (CA 7, 1980) ("This tactic of admitting what the evidence strongly demonstrates at the same time as denying other elements or other crimes before the jury is also familiar to this court and we find no error in counsel's use of the tactic.") Counsel's mere acknowledgement that the victim was tortured does not comprise an admission that Frank committed the torture. Rather, counsel merely recognized that the victim had been tortured but did not state or imply that Frank was the person who committed the torture.

Nor was this an improper nullification argument. Counsel argued in essence that even if the court believed the victim's testimony, that testimony should be viewed favorably with respect to Frank because the victim testified that Frank prevented Tae-Tae and Fat Boy from committing further acts. This argument was consistent with a view that Frank was merely present while Tae-Tae and Fat Boy committed the torture, and that Frank's only role with respect to the torture was to prevent Tae-Tae and Fat Boy from taking further actions. Frank has not overcome the presumption that his counsel's choices regarding what arguments to present in closing comprised sound trial strategy. *Petri*, 279 Mich App at 411.

*ii. Sentencing*

Next, Frank argues that the trial court erred in scoring prior record variable (PRV) 2 at five points, and that resentencing is required. The prosecution concedes that PRV 2 was incorrectly scored at five points. Eliminating the assessment of five points for PRV 2 reduces Frank's total PRV score from 25 points to 20 points. As the prosecutor concedes, this correction changes Frank's sentencing cell for the sentencing offense (torture), from D-VI to C-VI on the class A grid, thereby changing the guidelines' recommended minimum sentencing range from 171 to 285 months to 135 to 225 months.[2] See MCL 777.62. Because correction of this scoring error changes the recommended minimum sentencing range, resentencing on the sentencing offense, torture, is required. *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).[3]

Frank also argues that the trial court erred in failing to make corrections to the PSIR. The prosecution concedes that, at sentencing, the parties and the court agreed to make certain corrections to the PSIR to remove inaccurate factual assertions and that the court then failed to make the agreed-upon corrections. Accordingly, on remand, the trial court should make the agreed-upon corrections to the PSIR.[4]

## II. DOCKET NO. 323966

### i. Ineffective assistance of counsel

Tion first argues that the trial court abused its discretion in denying his post-sentencing motion for a new trial because he was denied the effective assistance of counsel.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *Petri*, 279 Mich App at 410. Findings of fact are reviewed for clear error, but the ultimate constitutional issue is reviewed de novo. *Id*. A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174

---

[2] We note that the sentencing guidelines recommended minimum sentencing range is advisory only as opposed to mandatory and the trial court may impose a sentence that it deems reasonable. *See People v Lockridge*, ___Mich___; ___NW2d___(2015) (Docket No. 149073) (Slip op. at 2).

[3] Frank also argues that he should have been given jail credit for 175 days served instead of 165 days. The prosecution agrees with defendant. On remand, the trial court should amend the judgment of sentence to credit Frank with 175 days served.

[4] With respect to the method of correcting the PSIR, Frank argues that the trial court should do more than make hand-written notations to the PSIR. The parties agree that on remand they should have an "opportunity to agree upon an acceptable version of the [challenged] offense in line with the testimony of the case." On remand, the trial court should exercise its discretion to make appropriate corrections after affording the parties an opportunity to come to agreement. See e.g. *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010).

(2003). Because the trial court did not hold a *Ginther*[5] hearing, our review is limited to mistakes apparent on the record. *Petri*, 279 Mich App at 410.

Tion argues that counsel was ineffective for advising him not to testify in his own defense. At trial, Tion expressed agreement with his attorney's statement that they had discussed Tion's right to testify and Tion stated that he did not wish to testify. The trial court then explicitly informed Tion that it was ultimately his decision alone whether he would testify, and Tion again stated that he chose not to testify. It is therefore clear that Tion made the ultimate decision not to testify after being informed of his rights. Moreover, Tion has failed to establish that his counsel's advice fell below an objective standard of reasonableness. In this case, given the overwhelming evidence that corroborated the victim's testimony, Tion cannot show how counsel's advice was objectively unreasonable. Rather, counsel's advice was a strategic decision that we will not second-guess with the benefit of hindsight. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991); *Petri*, 279 Mich App at 411.

Furthermore, Tion cannot show there is a reasonable probability that but for counsel's advising him not to testify, there is a reasonable likelihood that the outcome of the proceeding would have been different. *Ackerman*, 257 Mich App at 455. Although Tion's unsworn affidavit asserts that he wanted to testify and that his testimony would have countered that of the victim, Tion offers no basis to conclude that the trial court would have believed Tion's testimony rather than the victim's on the disputed facts where there was other evidence that corroborated the victim's testimony. In short, Tion was not denied the effective assistance of counsel as guaranteed by the Sixth Amendment. *Id*.

Tion requests a remand for a *Ginther* hearing. In an unsworn affidavit filed in the lower court, Tion asserted that he would have testified at trial and that his testimony would have countered the victim's testimony. However, remand for further factual development is not warranted because, as discussed above, even if the factual assertions in the affidavit are considered, Tion cannot show that, but for counsel's advice not to testify, there is a reasonable probability that the result of the proceeding would have been different. *Ackerman*, 257 Mich App at 455. Therefore, his ineffective assistance of counsel claim fails. *Id*.

*ii. Sentencing*

Next, Tion challenges the trial court's factual findings underlying the scoring of offense variable (OV) 7 (aggravated physical abuse) and OV 8 (victim asportation or captivity).[6]

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] In his brief on appeal, defendant states that the guidelines' factors "must be proved beyond a reasonable doubt," without providing supporting authority or developing a coherent argument. Such treatment of the issue constitutes abandonment. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Even if we were to consider defendant's argument, we note that our Supreme Court has relied on *McMillan v Pennsylvania*, 477 U.S. 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986) stated: where "'effectively challenged,' a sentencing factor need be proved only by a

In addressing a challenge to the factual basis underlying the trial court's scoring of the OVs, "[u]nder the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

The trial court assessed 50 points for OV 7; OV 7 addresses aggravated physical abuse. MCL 777.37(1); *Hardy*, 494 Mich at 439. MCL 777.37 governs the scoring of OV 7 and it directs the sentencing court to assess 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a).

In assessing 50 points for OV 7, the trial court found facts to support that Tion engaged in conduct "designed to substantially increase the fear and anxiety a victim suffered during the offense." In *Hardy*, 494 Mich at 440, our Supreme Court "conclude[d] that it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 441. The defendant's conduct need not be similarly egregious to sadism, torture, or excessive brutality, and courts may consider circumstances that inhere in the crime when scoring OV 7. *Id*. at 443. "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444.

In this case, the record shows that Tion was present when the victim was forced to strip naked and was repeatedly tortured and beaten for a prolonged period of time and Tion participated in the offenses by pointing a gun at the victim to prevent him from leaving and by hitting the victim. The offense of unlawful imprisonment was complete at that point, but Tion continued to point a gun at the victim when the codefendants moved the victim to a secluded area of the house and while they heated a clothes iron to further torture and burn the victim. After the iron was hot, Tion continued to point a gun at the victim while the others burned the victim with the iron. To hold a victim at gunpoint while he is forced to strip naked, while he is beaten and while others are preparing and using an iron to burn the victim constitutes conduct that is designed to substantially increase the fear and anxiety of the victim. *Hardy*, 494 Mich at 443-444. The trial court did not clearly err in scoring OV 7 at 50 points. *Id*. at 438.

The trial court scored OV 8 at 15 points. MCL 777.38 governs the scoring of OV 8 and it directs a trial court to assess 15 points where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a).

---

preponderance of the evidence. Thus, facts regarding criminal acts, like a host of other express or implied findings judges typically make in determining a sentence, need not be decided by a jury, or even proven beyond a reasonable doubt or by clear and convincing evidence." *People v Ewing*, 435 Mich 443, 472-473; 458 NW2d 880 (1990).

In this case, there was a preponderance of the evidence to support that Tion asported the victim to a place of greater danger or a situation of greater danger and was held captive beyond the time necessary to commit the offenses. Here, the victim testified at trial that he was moved to an upstairs bedroom and later to a basement during the criminal incident; those locations were places of greater danger because they were isolated parts of the house where detection of crimes might be avoided. See e.g. *People v Chelmicki*, 305 Mich App 58, 71; 850 NW2d 612 (2014) (upholding the scoring of OV 8 where the victim was moved from an apartment balcony to the interior of the apartment). Moreover, evidence supported that the unlawful imprisonment occurred over a period of time in which the victim was assaulted. Unlawful imprisonment "can occur when the victim is held for even a moment." *Id*. Therefore, by continuing to hold the victim against his will, Tion effectively held the victim "longer than the time necessary to commit the offense of unlawful imprisonment." *Id*. In short, the trial court did not clearly err in assessing 15 points for OV 8 where the scoring was supported by a preponderance of the evidence. *Hardy*, 494 Mich at 443-444.

## C. CONCLUSIONS

In Docket No. 320895, we affirm Frank's convictions, vacate his sentence for torture and remand for resentencing on that offense, and remand for correction of the PSIR and for amendment of the judgment of sentence to award Frank credit for 175 days served consistent with this opinion. In Docket No. 323966, we affirm Tion's convictions and sentences in their entirety. We do not retain jurisdiction in either case.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens

-8-