# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DOUGLAS MARTIN FREDERICK,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2017

No. 328866
Oakland Circuit Court
LC No. 2014-252255-FH

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

A jury convicted defendant of one count of breaking and entering, MCL 750.110, and one count of malicious destruction of property of $1,000 or more, but less than $20,000, MCL 750.377a(1)(b)(*i*). The trial court sentenced defendant to 18 months' probation. Defendant appeals, and for the reasons provided below, we affirm.

The charges in this case arose out of a break-in at the Oakland County Veteran Services (OCVS) office in Troy. Police testimony established that someone shattered the exterior and interior glass doors of the building and entered the office. Feces were found near the receptionist's counter, on an information pamphlet, and on a decorative bow on the floor. Video taken from a surveillance camera was admitted into evidence and played for the jury. Two employees identified defendant as the person seen on the surveillance video. The employees stated that they were familiar with defendant because two days before the break-in, defendant visited the office twice on the same day and was angry that he was denied benefits. Before leaving the office after his second visit, defendant stated, "I am going to go all PTSD on your office[!]"

On defendant's initial appeal, we remanded to the trial court to conduct an evidentiary hearing on defendant's claims of ineffective assistance of counsel and newly discovered evidence.[1] Following the hearing, the trial court denied defendant's motion for a new trial.

---

[1] *People v Frederick*, unpublished order of the Court of Appeals, entered April 8, 2016 (Docket No. 328866).

Before us are the issues considered by the trial court on remand: (1) whether trial counsel's decision not to object to certain testimony regarding his bipolar disorder amounted to ineffective assistance of counsel and (2) whether defendant was entitled to a new trial based on newly discovered evidence from a sleep apnea machine which purported to show that he was home asleep at the time of the crimes.[2]

"We review for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or [when it] makes an error of law." *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citation omitted).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error," while "the ultimate constitutional issue arising from an ineffective assistance of counsel claim" is reviewed de novo. *Id.*

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v Richter*, 562 US 86, 104; 131 S Ct 770; 178 L Ed 2d 624 (2011) (quotation marks and citation omitted).

The reviewing court must make every effort "to eliminate the distorting effects of hindsight," *Strickland*, 466 US at 689, including being mindful that no expectation should exist "that competent counsel will be a flawless strategist or tactician," *Harrington*, 562 US at 110. The reviewing court should "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Cullen v Pinholster*, 563 US 170, 196; 131 S Ct 1388; 179 L Ed 2d 557 (2011) (quotation marks and citation omitted). Furthermore, counsel's decisions regarding the choice of theories to present is presumed to be sound exercises of trial

---

[2] The trial court also considered and addressed whether the probation condition imposed by the court to "not enter Veterans Administration offices" was overbroad and violated defendant's due process rights. But, as we explain later, this issue is not before us.

strategy, *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002), and "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

During the examination of defense witness, Dr. Fayez Shukairy, it was elicited that he had been defendant's primary care physician for over 20 years and treated defendant "for whatever condition comes up." While recounting defendant's ailments, Dr. Shukiary testified that he referred defendant to a neurosurgeon for problems with his back. But Dr. Shukiary stated that the first neurosurgeon that he referred defendant to "does not want to see him anymore"; consequently, Dr. Shukiary referred defendant to a second neurosurgeon. On cross-examination, the prosecutor inquired into why the first neurosurgeon did not want to see defendant anymore. Dr. Shukiary suspected that it was because defendant had "bipolar disorder" and during his office visits, defendant would "complain[] from A to Z . . . about everything" and the first neurosurgeon may not have been comfortable with that. Dr. Shukiary also testified that defendant could become quite agitated, but not violent.

After both parties finished questioning Dr. Shukiary, the trial court allowed the jury to ask questions. Five of the questions submitted by the jury were posed to Dr. Shukiary. Defendant claims that his trial counsel should have objected to these two questions/answers:

> *Q*. Do you know, does the defendant to your knowledge faithfully medicate for his bipolar disorder?
>
> *A*. I don't think he does.
>
> *Q*. Does the defendant have a history of mood swings?
>
> *A*. Well, by the nature of the bipolar disorders, yes.

Defendant has failed to prove that trial counsel's decision not to object to the jury's questions fell below an objective standard of reasonableness. We reject defendant's initial claim that Dr. Shukiary lacked the requisite personal knowledge to testify on these matters. It was established that Dr. Shukiary regularly treated defendant for a very long time and had access to defendant's records from other treating specialists that defendant saw. Thus, there is nothing to support defendant's position that Dr. Shukiary lacked personal knowledge to answer the two questions asked by the jury. Indeed, such an argument is contrary to defense counsel's position at the trial court that Dr. Shukiary could testify regarding the other medical conditions defendant suffered from, despite the fact that the other specialists primarily were responsible for the treatment of those other conditions.

Defendant's second claim that the questions sought to elicit irrelevant information—and therefore were inadmissible—is a much closer call. MRE 402 precludes the admission of irrelevant evidence. Here, arguably, whether defendant "faithfully" took medication to treat his bipolar disorder was not relevant to any issue before the jury. Thus, the evidence was not admissible. However, defense counsel testified at the evidentiary hearing that he did not object at trial because he thought that Dr. Shukiary's answer would not "damag[e] our case." We are not convinced that counsel acted unreasonably. While an objection based on a lack of relevancy may have ultimately been successful, such an objection may have had the unintended

consequence of highlighting to the jury defendant's lack of diligence with his medication. When defense counsel's sole defense theory at trial was that defendant was not the person who broke into the OCVS office and committed the charged crimes, it is easy to see why counsel would not spend any appreciable effort to prevent the introduction of evidence at trial that neither tended to prove that he committed the offenses[3] nor tended to prove that he was not present at the time of the offenses.

Moreover, assuming that defense counsel should have lodged an objection to the jury's questions, defendant's assertion that the failure caused prejudice is purely speculative. There is no evidence that the jury would have reached a different verdict if they had not been exposed to the evidence that defendant failed to faithfully take his bipolar disorder medication.[4] Two employees of the office testified that they each had an interaction with defendant just two days before the break-in where defendant not only made threats, but made a specific threat against their particular office. Those two employees were also able to independently identify defendant on the surveillance tape. An officer also testified that the surveillance video showed that the man who broke into the office was approximately 5' 6" tall, and there was evidence that defendant was indeed 5' 6" tall. Further, that same officer testified that when he questioned defendant and notified defendant that his vehicle appeared to be at OCVS at the time the crimes were committed, defendant admitted that he might have been in the area because he turned around in the parking lot near that time. His admission to the officer that he was indeed in the parking lot the night of the crimes would have been too much of a coincidence for the jury to disregard. We also note that the surveillance video was played for the jurors, which gave them the opportunity to view and assess it. Therefore, in light of this evidence, defendant cannot show "a different result would have been reasonably probable" if trial counsel had prevented the jury's questions related to bipolar disorder from being asked. Consequently, the trial court did not abuse its discretion when it denied defendant's motion for a new trial based on a claim of ineffective assistance of counsel.

## II.  NEWLY DISCOVERED EVIDENCE

---

[3] It is important to note that the prosecution never claimed that defendant's disorder made him more likely to have committed the charged acts. Indeed, the only other reference to defendant's bipolar disorder occurred during the prosecutor's rebuttal argument, where she argued to the jury that defendant's mental state was irrelevant and should *not* be considered in the jury's deliberations.

[4] Again, the fact that defendant suffered from bipolar disorder was previously admitted into evidence and the admission of that evidence is not challenged on appeal. We note that the second jury question pertaining to whether defendant has a history of mood swings has absolutely no prejudicial effect. Dr. Shukiary's answer to this question was somewhat repetitive, as we believe that most people today are probably already somewhat familiar that "bipolar disorder" entails "mood swings" or "alternating episodes of depression and mania." See *Merriam-Webster's Collegiate Dictionary* (11th ed).

Defendant also argues that he should be granted a new trial due to newly discovered evidence, which consists of data from a sleep apnea machine. Defendant asserts that the data proves that he was at home at the time the charged crimes were committed.

The grant of a new trial due to newly discovered evidence is appropriate if a defendant can prove that "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citations omitted). The parties agree the evidence is newly discovered and non-cumulative. The parties disagree, however, that the evidence could not have been discovered using reasonable diligence and on whether the evidence makes a different result probable on retrial.

We hold that the data from the sleep apnea machine could have been discovered using reasonable diligence. Defendant claims that he learned that the machine stored the usage data about a month after his trial. He explained that "after the trial occurred," he thought "maybe I should look into that." And after he inquired, he discovered that the machine does log and store usage data. However, defendant fails to explain how using "reasonable diligence," he could not have made this same discovery *before* trial. Indeed, through reasonable diligence, we have no doubt that the evidence was discoverable before trial. Nothing prevented him from having this same epiphany earlier. Further, defendant had been using the machine for many years and was, presumably, aware that his insurance required him to use the machine in order to maintain coverage. Defendant should have known, or at least suspected, that his doctor would have a way to track his use of the machine so that it could be reported to his insurance agency.

We also conclude that the data from the machine does not make a not guilty verdict probable on retrial. The data appears to show that the machine was used from about 10 p.m. to 5 a.m. on the night of the break-in. This data, however, contained multiple "interruptions," so there are breaks in the usage. Furthermore, defendant's doctor called into question the accuracy of the machine's internal clock and, contrary to defendant's assertions, revealed that the machine would record usage whether the mask was worn or not. The doctor conceded that it would be possible for a patient to manipulate the device so the data would "erroneously reflect usage, when in fact no one was wearing the mask." As a result, when asked if the doctor was certain that the device was being worn by defendant during the one-hour period between 11:30 p.m. on May 29, 2014, and 12:30 a.m. on May 30, 2014, the doctor answered, "No." We also note that any contention that defendant was at home using his sleep apnea machine at the time of the break-in is belied by defendant's own admission to the investigating officer that he indeed could have been in the area at that time because he may have turned his vehicle around in the parking lot near midnight that night.

Consequently, because defendant cannot satisfy all four of the *Cress* elements, the trial court did not abuse its discretion when it denied defendant's request for a new trial based on the newly discovered evidence.

Affirmed.[5]

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad

---

[5] In his initial brief on appeal, defendant challenged the condition on defendant's probation that prevented him from contacting Veterans Services. But after our remand, the trial court modified this probation condition, and defendant now withdraws the issue. Accordingly, we deem the issue moot, and no further consideration of the matter is needed.

Defendant also filed a Standard 4 brief with the Court. Defendant's Standard 4 brief is almost incomprehensible as it lacks issue statements, citations to the record or caselaw, and pertinent analysis (legal or otherwise). In sum, defendant fails to raise any appreciable legal issues in his brief. Therefore, any issues raised have thus been abandoned on appeal. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).