*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SAUL ARTURO MEJIA,

Defendant-Appellant.

UNPUBLISHED
February 14, 2019

No. 339426
Berrien Circuit Court
LC No. 2016-016334-FC

Before: METER, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant, Saul Arturo Mejia, appeals by right his convictions of one count of first-degree criminal sexual conduct, MCL 750.520b, and one count of second-degree criminal sexual conduct, MCL 750.520c. We affirm.

## I. BACKGROUND

This case concerns defendant's sexual abuse of his minor niece, JS, who lived with defendant and her aunt between the ages of 7 and 15. JS testified that defendant began inappropriately touching her when she was approximately nine years old and that the touching became more frequent and sexual as she grew older. According to JS, by the time she was 13 or 14 years old, defendant was digitally penetrating her vagina. Around the time JS was 14 or 15 years old, she began an online friendship with JP, who lived in England. JS first disclosed the abuse to JP, and then to her aunt and biological father. According to JS, when she told her aunt about the abuse, her aunt yelled at her, so, in an effort to get her aunt to stop yelling, she told her aunt that she lied about the abuse to get attention from JP. Defendant's theory at trial focused on this recantation, positing that JS fabricated the story to get attention from JP.

JS also testified that she had delayed disclosing the abuse for some time. At trial, several witnesses testified that it was normal for children to delay disclosing sexual abuse. The lead detective in this case testified that he had investigated hundreds of sexual-assault complaints and that, in his experience, the cases involving children "absolutely" involved delayed disclosure. The lead detective also testified that it was not uncommon for a victim to have continued contact with her abuser. Barbara Welke, the former director of the Children's Assessment Center

(CAC), was admitted as an expert in the area of forensic interviewing of sexually abused children. Welke testified that scientific literature revealed that it was not uncommon for children to delay disclosing sexual abuse and that a child may recant an allegation of abuse, despite it being true. Welke cited several studies in her testimony, one of which she claimed indicated that 25% of child victims recant their allegations during the disclosure process. According to Welke, several factors affect whether a child delays disclosure or recants her allegations. For instance, a child may delay disclosure or recant her allegations if she does not feel supported or believed. On cross examination, however, Welke admitted that sometimes children do lie about sexual abuse.

As noted previously, defendant was convicted of two counts of criminal sexual conduct. Following defendants convictions, this Court granted defendant's motion to remand for a *Ginther*[1] hearing to determine whether his trial counsel was constitutionally deficient. *People v Mejia*, unpublished order of the Court of Appeals, entered February 5, 2018 (Docket No. 339426).

At the *Ginther* hearing, the parties explored several claims of ineffective assistance. Primarily, defendant argued that his trial counsel was ineffective for failing to challenge Welke's expert testimony—either through a *Daubert*[2] hearing or by procuring an independent expert. As evidence of counsel's ineffectiveness, defendant offered the testimony of Dr. Maggie Bruck, an experimental psychologist. Bruck testified that Welke's testimony related to the theory of Child Sexual Abuse Accommodation Syndrome (CSAAS), which originated from an article by Dr. Roland Summit published in 1983. In that article, Dr. Summit claimed that children do not readily disclose abuse for a variety of reasons, including that they feel threatened or embarrassed, or simply do not understand the nature of the act. According to Dr. Summit, delayed disclosure is a result of the child's process of developing a coherent narrative before disclosing the abuse. Bruck opined that, since Summit's theory was first proposed, the "field has broken open" and child disclosures have been explored in greater scientific depth. According to Bruck, several aspects of CSAAS have been criticized, most notably the use of delayed disclosure and recantation as proof of sexual abuse. Bruck testified that studies revealed that delayed disclosure and recantation also occur when a child's story has been fabricated; accordingly, delayed disclosure and recantation are not reliable evidence of abuse. Bruck then raised several issues with the articles cited by Welke. Of note, Bruck opined that, although there was literature indicating a 25% recantation rate for child victims, Welke had cited the wrong study in her testimony and the more methodologically reliable studies had revealed a recantation rate under 10%. Nevertheless, Bruck acknowledged that delayed disclosure and recantation are not necessarily inconsistent with a true allegation.

For his part, defense counsel testified that he consulted with an expert in forensic interviewing but chose not to present any expert testimony because this case was not particularly "difficult, scientific, [or] highly technical." According to defense counsel, his strategy at trial

---

[1] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

[2] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 469 (1993).

was to cross examine Welke and get her to testify that "kids sometimes lie." Defense counsel opined that this case involved "the credibility of a teenage girl" and that Welke would not be able to testify that any scientific principle reliably indicated that JS was telling the truth. Accordingly, defense counsel made the choice not to submit Welke's testimony to a *Daubert* hearing.

The trial court denied defendant's claims of ineffective assistance of counsel, reasoning that Welke's testimony was admissible under MRE 702 and that defense counsel made a reasonable strategic choice to use her testimony to his advantage instead of challenging it under *Daubert* or through a counter-expert. This appeal followed.

## II. ANALYSIS

On appeal, defendant raises several challenges related to Welke's testimony. Defendant argues that Welke was not qualified to give expert testimony and that his trial counsel was ineffective for failing to request a *Daubert* hearing to challenge the reliability of her testimony. According to defendant, his counsel was also ineffective for failing to call a counter-expert and for failing to cross-examine JS's cousin regarding JS's relationship with defendant. Finally, defendant raises an unpreserved challenge to the lead detective's testimony that child sexual abuse victims often delay disclosure, arguing that this testimony improperly vouched for the victim's credibility.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo." *Id.*

MRE 702 governs the admissibility of expert testimony and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 incorporates the standards of reliability established by the federal Supreme Court in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). See *Gilbert v Daimler Chrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). Accordingly, a *Daubert* hearing tests whether the reasoning or methodology underlying the proposed expert testimony is scientifically valid and whether the methodology can be applied to the facts at issue. See *Daubert*, 509 US at 592-593.

A claim of ineffective assistance of counsel presents "a mixed question of law and fact." *People v Hunter*, 493 Mich 1015; 829 NW2d 871 (2013). Questions of law are reviewed de novo. *Id.* "We review the trial court's factual findings for clear error. Clear error exists if the

reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (internal citations omitted).

A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

## A. WELKE'S EXPERT TESTIMONY

We address first defendant's argument that the trial court abused its discretion by finding that Welke was qualified to enter an expert opinion. While defendant acknowledges that Welke was experienced in the field of adolescent forensic interviewing, defendant argues that Welke was not sufficiently qualified in CSAAS to give an expert opinion. We disagree. As noted previously, a witness must be "qualified . . . by knowledge, skill, experience, training, or education" before she may give an expert opinion on a matter. MRE 702.

Welke testified about her extensive experience, training, and education regarding sexually abused children. Welke served as director of the CAC for 13 years and, at the time of trial, was providing forensic interview services to the CAC as a contractor. Welke has a master's degree in social work, and she has completed 700 hours of training in child sexual abuse, adolescent forensic interviewing techniques and protocols, and child development. In addition, Welke had conducted approximately 4,000 forensic interviews of children during the previous 16 years and had testified as an expert in child sexual abuse on numerous occasions. This first-hand experience granted Welke the knowledge necessary to testify regarding child disclosure of sexual abuse. Regarding CSAAC, while Welke had not conducted research in CSAAC herself, she was well versed in the theory as it was directly applicable to her forensic interviews. Additionally, Welke had read extensively on the subject as part of a journal review group that discussed it. Indeed, Welke was able to explain several studies on CSAAC at trial and apply them to her experience as a forensic interviewer. Therefore, given Welke's experience, education, and training, the trial court's conclusion that Welke was qualified to enter an expert opinion was not outside the range of principled outcomes.

Next, defendant argues that his counsel was ineffective for failing to request a *Daubert* hearing to challenge Welke's testimony as being unsupported by reliable principles and methods. We disagree. As already noted, Welke had previously been admitted as an expert witness on

several occasions. Welke had conducted more than 4,000 forensic interviews and was well-qualified to discuss her opinion on how children disclose abuse, including whether a delay in disclosure or recantation of an allegation was unusual. To the extent that Welke's testimony incorporated aspects of CSAAC, defense counsel testified that he did not find the theory particularly useful to this case. Defense counsel's strategy was to show that this was an unusual case in which the victim got caught up in the fantasy of an online relationship and, because of the influence that the relationship had on her, fabricated the allegation of abuse. To advance this defense, defendant's counsel did not need to examine the methodology underlying CSAAC; rather, all counsel had to do was procure testimony that children sometimes lie about sexual abuse. Accordingly, defense counsel made the strategic decision to focus on cross-examination, rather than attempting to preclude Welke's testimony altogether. Defense counsel followed through with this strategy at trial and was successful in procuring testimony from Welke that children do, in fact, lie about sexual abuse on occasion. Welke also agreed that children sometimes recant because "what they said was a lie."

This Court does not second guess counsel on matters of trial strategy. *Russell*, 297 Mich App at 716. Decisions regarding what theory to pursue at trial, what evidence to present, and how to challenge witnesses are matters uniquely reserved to counsel's discretion. *Rockey*, 237 Mich App at 76. Given that the science behind Welke's testimony was not particularly relevant to the defense theory and that defense counsel was able to advance his theory by cross examining Welke, we cannot conclude that defense counsel's decision not to request a *Daubert* hearing was objectively unreasonable. Defendant's argument that counsel was ineffective for failing to request a *Daubert* hearing is without merit.

For these same reasons, we also reject defendant's related argument that defense counsel was ineffective for failing to procure an expert witness to counter Welke's testimony regarding CSAAC. Again, per defense counsel's evaluation, the debate over CSAAC was not particularly relevant to this case. Rather, defense counsel believed that the main issue in this case was the credibility of the victim. Although defense counsel did consult an expert in child forensic interviewing, defense counsel decided not to present this witness. Rather, defense counsel chose to focus on the narrative of a teenager caught up in an online relationship and telling lies for attention. Counsel's strategy was ultimately unsuccessful; however, "[a] failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412-413; 760 NW2d 882 (2008). Counsel is given "wide discretion in matters of trial strategy," *People v McFarlane*, ___ Mich App ___, ____; ___NW2d___ (2018) (Docket No. 336187); slip op at 8, and we find no reason to conclude that counsel's choice to present a narrative to the jury, rather than an intricate scientific debate, was objectively unreasonable. Accordingly, we are unable to conclude that defense counsel was ineffective for deciding not to pursue an expert witness versed in CSAAC.

## B. JS'S COUSIN

Next, we address defendant's argument that defense counsel ineffectively cross examined JS's cousin AR. At trial, JS testified that defendant was "like her best friend" because she could tell him anything. During the police investigation, however, AR told police that JS would complain about living with defendant because defendant was mean to JS. Defendant argues that defense counsel should have cross-examined AR about this statement to undermine JS's

testimony that she and defendant had a good relationship and to show that JS had motive to fabricate the allegations against defendant.

At the *Ginther* hearing, defense counsel testified that defendant maintained that he and JS had a very close relationship and that he would not have committed the charged offense because of the close relationship. Indeed, defendant wanted to make his close relationship a part of the defense. Defense counsel testified that he chose not to cross examine AR with the police report because doing so would be against the trial strategy defendant asked him to pursue. We agree. AR's statement tended both to undermine defendant's theory regarding his relationship with JS and paint defendant in a negative light. On appeal, defendant asks this Court to second-guess the strategic decision that he and his counsel made before trial. That we cannot do. *Russell*, 297 Mich App at 716. Defendant is not entitled to a new trial simply because the strategy he pursued at the first trial was unsuccessful. *Petri*, 279 Mich App at 412. Moreover, on direct examination, AR testified that JS disliked defendant and that defendant treated JS poorly. Thus, the proposed statement was merely duplicative of the testimony already presented. Accordingly, there is no reasonable likelihood that the admission of AR's statement to police would have resulted in a different verdict. Defendant's claim is without merit.

## C. THE LEAD DETECTIVE

Finally, defendant argues that the lead detective's testimony improperly vouched for the victim's credibility and was unfairly prejudicial. We review this unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Generally, "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013).

As noted previously, the lead detective testified that he had investigated hundreds of sexual-assault complaints and that the complaints involving child victims "absolutely" involved delayed disclosure. The lead detective also testified that it was not unusual for a victim to have continued contact with her abuser. What the lead detective did not do, however, is comment on JS's credibility, let alone vouch for her. The lead detective merely presented his general opinions regarding children's disclosure of sexual assault based on his extensive experience investigating sexual-assault complaints. Indeed, this is the exact type of expert opinion that this Court found admissible in *People v Dobek*, 274 Mich App 58, 79; 732 NW2d 546 (2007).

Defendant argues that the detective's testimony was unfairly prejudicial because it tended to corroborate JS's testimony. Yet, there is no general prohibition against corroborative evidence and defendant has not explained how this evidence was unfairly prejudicial merely because it was corroborative. Indeed, the basic purpose of a trial is to submit the evidence—both

-6-

corroborating and conflicting—for fact finding. Defendant has failed to establish that the lead detective's testimony was improper.[3]

Affirmed.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Thomas C. Cameron

---

[3] Defendant argues that the cumulative effect of several errors denied him a fair trial. See *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). "Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).