*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GERALD MICHAEL WICKINGS,

Defendant-Appellant.

UNPUBLISHED
March 26, 2019

No. 339891
St. Clair Circuit Court
LC No. 17-001071-FH

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of third-offense domestic violence, MCL 750.81(5), unlawfully driving away an automobile (UDAA), MCL 750.413, and witness intimidation or interference, MCL 750.122(7)(b). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 5 to 20 years' imprisonment for the domestic violence conviction, 5 to 20 years' imprisonment for the UDAA conviction, and 5 to 15 years' imprisonment for the witness intimidation conviction. We affirm.

This case arises out of an incident that occurred on March 12, 2017, at the trailer of Mindy Mogan, defendant's then-girlfriend. According to Mindy's testimony at trial, while she was asleep on the couch, defendant repeatedly attempted to wake her by kicking the couch. The two began to argue. During the argument, defendant poured coffee into Mindy's purse, flicked his lit cigarette down her shirt causing her to burn, and then placed his hands around her neck and pushed her onto the couch. After defendant pushed her onto the couch, he grabbed the keys to Mindy's truck and ran outside. Mindy pursued, demanding that he return her keys. However, as she was running after defendant, he turned around and punched her in the face. Defendant then drove away in Mindy's truck.

Approximately 10 to 15 minutes after the incident, Mindy was picked up by her sister, Mandy Cote, and Mandy's boyfriend, Shawn DeWitt. As they were driving, they noticed Mindy's truck approximately six trailers away from Mindy's trailer, parked at the trailer of defendant's brother, Donald Lee. DeWitt stopped at Lee's trailer and went to go retrieve Mindy's keys. At this time, defendant, Lee, and Lee's girlfriend, Miceyla Sanchez, emerged

-1-

from the home. Defendant then punched DeWitt. Shortly thereafter, the police arrived, and at this time, defendant left the scene. Mindy gave a statement to Michigan State Police Trooper Christopher Tuckey, in which she recounted that defendant had poured coffee in her purse, flicked his lit cigarette at her, grabbed her neck and pushed her down, and punched her in the face when she asked for her keys. Defendant was arrested approximately two weeks later.

Mindy testified at defendant's April 18, 2017 preliminary examination. Notwithstanding the information she provided to Trooper Tuckey on the day of the incident, Mindy provided a different version of the incident. She testified that on the morning of the incident, she and defendant were both angry and that she was groggy from having taken sleeping pills the night before. She stated that defendant did not flick the cigarette at her, but rather, the cigarette somehow fell down her shirt when defendant was passing it to her. She also described defendant as "push[ing]" her on the couch. After defendant grabbed her keys and ran outside, she ran after him, asking for her keys back. Instead of the "punch" she described earlier to Trooper Tuckey, Mindy testified that defendant had pushed his coat (with his hand underneath the coat) at her, and as a result of that push, she fell backward and tripped over the railing of her porch.

At the preliminary examination, Mindy admitted that defendant had told her to testify that he had not physically touched her during the incident, other than when he pushed her on the couch. Mindy also stated that she had stayed with friends prior to being subpoenaed to testify because defendant told her that she should try to avoid being served.

At defendant's trial, Mindy recounted the incident in accordance with how she originally had reported the incident to Trooper Tuckey. She stated that she had "sugarcoated" the incident at the preliminary examination because she still loved defendant at that time, and she did not want to be responsible for "ruining" his life. In her trial testimony, Mindy also admitted that she had written a letter to the prosecutor's office, asking that it dismiss the case, in which she stated that there had been absolutely no physical contact during the incident and that she had scissors in her hand when she ran out of her trailer after defendant, although she maintained that the letter was false. Mindy also testified that after the initial incident, defendant had contacted her and asked her to tell the police that she had been the aggressor. DeWitt, Mindy, Trooper Tuckey, and Mindy's mother, Raydene Mogan, all testified at trial and corroborated Mindy's trial testimony. Sanchez also testified at the trial. She stated that she had been looking out her window at the time of the incident and saw Mindy attack defendant with an object, which she later identified as a pair of scissors. She testified that defendant did not touch Mindy, but rather, he threw his coat over her head to stop her from attacking him. She also testified that Mindy admitted to her that she had tried to stab defendant with a pair of scissors, which Sanchez claimed she found on the ground later that day. The jury ultimately found defendant guilty of domestic violence, UDAA, and witness intimidation or interference.

## I. JURY INSTRUCTIONS

### A. TRIAL COURT'S FAILURE IN NOT PROVIDING INSTRUCTIONS

Defendant argues that the trial court erred by omitting the jury instructions for prior inconsistent statements used to impeach a witness and use of nondeadly force in self-defense or defense of others. However, defendant has waived the issue. Waiver is the intentional

relinquishment of a known right, *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000), and "by expressly and repeatedly approving the jury instructions on the record, [a] defendant [waives] any objection to the erroneous instructions, and there is no error to review," *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).

Here, before the jury instructions were read, defense counsel agreed that the packet of jury instructions was correct. Additionally, just prior to the commencement of jury deliberations, defense counsel stated that he was satisfied with the reading of the jury instructions. Therefore, trial counsel expressly affirmed the jury instructions that were provided by the trial court, and as a result, defendant's claims of instructional error are waived.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel was ineffective for failing to request that instructions on prior inconsistent statements and the use of nondeadly force in self-defense, specifically M Crim JI 4.5 and M Crim JI 7.22, be provided to the jury. We disagree. "A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. Because no evidentiary hearing took place, our review is for errors apparent on the record. *People v Avant*, 235 Mich App 499, 507; 597 NW2d 864 (1999).

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation omitted). There is also a "strong presumption that counsel's performance was born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This presumption can only be overcome by a showing of counsel's failure to perform an essential duty, which failure was prejudicial to the defendant." *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). However, "trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law." *Id*. "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *People v Bush*, 315 Mich App 237, 243; 890 NW2d 370 (2016) (quotation marks and citation omitted).

## 1. M CRIM JI 4.5

Defendant argues that his trial counsel's failure to request the jury instruction regarding prior inconsistent statements resulted in the jury being unable to properly evaluate Mindy's trial testimony. Defendant claims that his trial counsel should have requested that the trial court provide M Crim JI 4.5, which states:

> You have heard evidence that, before the trial, [a witness / witnesses] made [a statement / statements] that may be inconsistent with [his / her / their] testimony here in court. (1) You may consider an inconsistent statement made before the trial to help you decide how believable the [witness' / witnesses'] testimony was when testifying here in court.

> (2) If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the [witness / witnesses] said in the earlier [statement / statements] when determining the facts of this case.

In making this argument, defendant primarily relies on part (2) of the instruction, which allows a jury to consider prior, sworn statements as substantive evidence of the truth, instead of as merely impeachment evidence, see MRE 801(d)(1)(A). Defendant asserts that Mindy's testimony at the preliminary examination, which was brought out at trial, could have been used to prove the truth of her preliminary examination testimony, i.e., to prove that defendant did not take her vehicle without her permission and that defendant did not assault Mindy. Defendant's arguments are not persuasive.

Regarding whether defendant had permission to drive Mindy's truck, defendant relies on Mindy's testimony at trial, in which (1) she agreed that at the preliminary examination, she stated that defendant could use her truck "all the time without having to ask permission[,]" and (2) acknowledged that she said the following at the preliminary examination: "We did not have to ask permission. We thought of it [i.e., Mindy's truck] as our vehicle."[1] But defendant's reliance on these prior statements is misplaced. First and foremost, these statements merely are a rephrasing of Mindy's trial testimony, in which she stated, "I don't normally ever give [defendant] permission, he just does what he wants. . . . He just did what he wanted to do. And I didn't say yes and I didn't say no, I just, it just happens because that's the way it always was." Therefore, because the jury already was free to view Mindy's trial testimony as substantive evidence, defendant cannot show that the failure to inform the jury it could have viewed Mindy's preliminary examination testimony—which in essence was the same as her trial testimony on this point—created a reasonable probability that he would not have been convicted of UDAA.

---

[1] Despite defense counsel's expressed intent at trial to provide the quote verbatim, defense counsel actually was paraphrasing Mindy's preliminary examination testimony. At the preliminary examination, Mindy actually stated, "[W]e really didn't have to ask each other for it [i.e., permission to drive] because we've been together, you know. . . . I didn't ask him, he didn't ask me . . . ."

Moreover, we note that how defendant and Mindy *typically* treated her truck was of little importance because she testified that she made clear that *at the time in question*, she told defendant that he could not use the truck. In other words, assuming that the jury could have viewed Mindy's preliminary examination testimony as substantive evidence that defendant did not, as a matter of course, have to seek permission to use her vehicle, it does not follow that Mindy could not and did not revoke that permission.

With respect to defendant's domestic violence charge, defendant relies on several of Mindy's statements at trial, in which she acknowledged that much of her preliminary examination testimony minimized certain aspects of what she claimed defendant did to her. However, we need not parse out which aspects were affected by this testimony, such as whether defendant intentionally flicked the cigarette at her or whether it accidentally fell down her shirt. What is important is that this preliminary examination testimony did nothing to call into question the conclusion that defendant pushed Mindy onto the couch or that defendant battered Mindy while she was on the porch—either of those episodes would support the jury's verdict to convict on the domestic violence charge.

Although Mindy at the preliminary examination attempted to downplay the severity of the "push" onto the couch, the crime of domestic violence does not require that the underlying act necessarily be violent. The commission of a simple "assault" or "assault and battery" is all that is required to satisfy a charge of domestic violence. See MCL 750.81(2); *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). And a battery is merely "an intentional, unconsented and harmful or offensive touching of the person of another." *Cameron*, 291 Mich App at 614 (quotation marks and citation omitted). Importantly, "[i]t does not matter whether the touching caused an injury," and "every battery necessarily includes an assault because a battery is the very 'consummation of the assault.' " *Id.* (citation omitted). On this topic, Mindy admitted at trial that in her preliminary examination testimony, she stated that "the only contact" defendant had with her was "him pushing [her] onto the couch." Therefore, if the jury had been instructed that it could have considered Mindy's preliminary examination testimony as substantive evidence, as defendant contends on appeal, it would have *supported* the conclusion that defendant battered, i.e., pushed, Mindy.

Further, Mindy's "sugarcoating" during the preliminary examination of what happened after she followed defendant out of her trailer also does not negate a finding that defendant battered Mindy while they were on the porch. At trial, Mindy stated that she previously testified at the preliminary examination that her "coming at [defendant on the porch] caused him to throw the coat at [her]." First, to the extent defendant is suggesting that Mindy's use of the word "caused" indicates that defendant did not batter Mindy, that contention is meritless. While Mindy going outside would be a factual cause for the battery because the battery would not have occurred had she not gone outside, see *People v Feezel*, 486 Mich 184, 194-195; 783 NW2d 67 (2010), it is not relevant for determining whether the elements of battery were satisfied, i.e., did defendant intentionally cause an unconsented and harmful or offensive touching, see *Cameron*, 291 Mich App at 614. Second, defendant seems to suggest that if what Mindy said was true— that defendant merely threw a coat at her instead of punching her in the face—then it would not support a finding of a battery. This is incorrect. As already noted, the severity or violent degree of the touching is not relevant. *Id.* Indeed, even if a touching causes no physical harm, it is sufficient to constitute a battery so long as it was "offensive." *Id.* Thus, in light of Mindy's

preliminary examination testimony fully showing that defendant, at a minimum, "threw" a coat at her, which itself would constitute a battery, defendant cannot show that if defense counsel had requested and the trial court had given M Crim JI 4.5, there was a reasonable probability that he would not have been convicted of domestic violence.[2]

## 2. M CRIM JI 7.22

Defendant also claims that his trial counsel should have requested M Crim JI 7.22, which pertains to the use of nondeadly force in self-defense and states, in part, that "at the time [he / she] acted, the defendant must not have been engaged in the commission of a crime," and that "when [he / she] acted, the defendant must have honestly and reasonably believed that [he / she] had to use force to protect [himself / herself ] from the imminent unlawful use of force by another."

Defendant claims that this instruction would have allowed the jury to exonerate defendant with respect to any allegation that he assaulted or battered Mindy on the front porch. Defendant relies on the testimony of Sanchez, who stated that she saw Mindy wielding an object that Sanchez later identified as a pair of scissors at the time defendant threw or pushed his coat at Mindy. Assuming that the instruction had been provided and that the jury would have found that defendant struck Mindy in self-defense while on her front porch, *such evidence would not speak to the prior battery inside Mindy's trailer*. This is important, as the evidence was uncontroverted, including the preliminary examination testimony introduced at trial that defendant battered Mindy while inside the trailer when he pushed her onto the couch. Further, the photographs admitted into evidence also showed marks around Mindy's neck that corroborated her testimony that defendant forcibly grabbed her and pushed her down. Therefore, we conclude that defendant has failed to show that there was a reasonable probability that had the instruction been provided, he would not have been found guilty of domestic violence. Accordingly, he cannot prevail on his claim of ineffective assistance of counsel.

## II. VERDICT AGAINST THE GREAT WEIGHT OF EVIDENCE

Defendant argues that the jury verdicts for domestic violence, UDAA, and witness intimidation went against the great weight of the evidence. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a new trial based on the great weight of the evidence. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "An appellate court will review a properly preserved great-weight issue

---

[2] We also note that in addition to Mindy's testimony that she had been punched by defendant, there was important corroborating evidence: the photographs of Mindy's injuries. The photographs, in part, show that Mindy had sustained significant injury around her lip area. This type of injury is much more consistent with Mindy having been punched, rather than having a coat "thrown" or pushed onto her face. Thus, this is yet another reason why defense counsel's failure to request, and the trial court's failure to provide, M Crim JI 4.5 did not affect the outcome of the trial.

by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Cameron*, 291 Mich App at 616-617. "Generally, a verdict may only be vacated when the verdict is not reasonably supported by the evidence, but rather it is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (quotation marks and citation omitted). "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *Unger*, 278 Mich App at 290. "Absent exceptional circumstances, issues of witness credibility are for the trier of fact." *Id*. "The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *Id*. (quotation marks and citation omitted).

Defendant first contends that the great weight of the evidence established that an assault did not occur based on Mindy's preliminary examination testimony, Sanchez's trial testimony, and the photographs admitted of the scissors and the torn jacket. However, the evidence as a whole does not preponderate against the jury's verdict.

The evidence supports a finding that defendant assaulted or assaulted and battered Mindy. The prosecution's witnesses provided evidence of assault or assault and battery. Mindy testified at trial that defendant grabbed her neck and pushed her onto the couch, flicked a lit cigarette at her, and punched her in the face. DeWitt, Mandy, and Trooper Tuckey testified to seeing the injuries on Mindy's face. Furthermore, photographs of Mindy's facial and neck injuries, as well as the burn mark on her body from the cigarette, were admitted into evidence. The defense presented two witnesses, including Sanchez, who contradicted the evidence by the prosecution by stating that defendant threw a coat at Mindy in response to Mindy's attack with a pair of scissors. Although there was contrary testimony introduced by the defense witnesses, contradictions from witnesses are generally insufficient to warrant a new trial. *Unger*, 278 Mich App at 290. The evidence supported the jury's finding that defendant committed an assault or an assault and battery, and therefore, the jury's verdict of domestic violence was not against the great weight of the evidence. Moreover, the evidence defendant relies on for this issue does not affect the uncontroverted evidence in support of a finding that defendant committed domestic violence inside Mindy's trailer.

Defendant also argues that his conviction of UDAA was against the great weight of the evidence because Mindy testified at the preliminary examination that her truck was commonly used by defendant because they were in a relationship, and he did not have to ask for permission. We have already discussed why this argument is without merit as to the specific incident at issue. While Mindy did testify that *typically* defendant was allowed to use her truck without having to ask her for permission, she unequivocally testified that she *revoked that permission*, which led to defendant striking her while they were on her porch. Consequently, the evidence did not preponderate against the verdict, and defendant's conviction of UDAA was not against the great weight of the evidence.

Defendant also argues that the jury's verdict as to witness intimidation or interference was against the great weight of the evidence because the evidence established that defendant never threatened Mindy, but rather, Mindy only claimed that defendant had given her a "guilt trip" about her testifying against him at trial. MCL 750.122, provides in relevant part:

(3) A person shall not do any of the following by threat or intimidation:

(a) Discourage or attempt to discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.

(b) Influence or attempt to influence testimony at a present or future official proceeding.

(c) Encourage or attempt to encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

* * *

(6) A person shall not willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding.

(7) A person who violates this section is guilty of a crime as follows:

(a) Except as provided in subdivisions (b) and (c), the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

(b) If the violation is committed in a criminal case for which the maximum term of imprisonment for the violation is more than 10 years, or the violation is punishable by imprisonment for life or any term of years, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both.

At trial, Mindy testified that defendant did not want her to appear in court. He encouraged her to avoid receiving a subpoena to testify by hiding in the back bedroom of her trailer. Additionally, defendant told her that she should testify that he never made physical contact with her. He also encouraged her to change her story on multiple occasions, claiming that he would be imprisoned for over 25 years if she testified. Mindy admitted during her trial testimony that she had "sugarcoated" her prior preliminary examination testimony to protect defendant. Therefore, Mindy presented testimony that established that defendant encouraged her to lie, interfered with her ability to provide truthful information, and discouraged her from attending official proceedings as a witness. Thus, we hold that defendant's conviction was not against the great weight of the evidence.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support his convictions of domestic violence, UDAA, and witness intimidation or interference. We disagree.

This Court reviews a sufficiency of the evidence challenge de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). "When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror in finding that the essential elements of the crime were proved beyond a reasonable doubt." *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). "The evidence is sufficient to convict a defendant when a rational factfinder could determine that the prosecutor proved every element of the crimes charged beyond a reasonable doubt." *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999).

In regard to the domestic violence charge, copious testimony was elicited during trial from the prosecution's witnesses that support defendant's conviction of domestic violence. As noted earlier, there is no debate that Mindy and defendant were in a domestic relationship at the time of the incident. In regard to the element of assault or assault and battery, Mindy testified that defendant put his hands around her neck and then pushed her onto the couch, threw a lit cigarette at her, and then punched her in the face when she attempted to retrieve her keys. DeWitt, Mandy, and Trooper Tuckey all stated that they saw the injuries to Mindy's face following the incident. Additionally, photographs of Mindy's injuries were admitted into evidence. Furthermore, although defendant references Mindy's preliminary examination testimony as support for his argument that an assault or an assault and battery did not occur, Mindy expressly stated multiple times that she had "sugarcoated" the events during the preliminary examination because she loved defendant and did not want to "ruin" his life. Therefore, there was sufficient evidence to convict defendant of domestic violence.

Defendant also argues that there was insufficient evidence to convict him of UDAA. As noted previously, Mindy testified that she owned the truck, and although Mindy had acquiesced in letting defendant take the truck whenever he wanted, on March 12, 2017, Mindy specifically told defendant he could not take her truck, and she asked for the keys back. Additionally, Sanchez testified that she saw defendant drive away in Mindy's truck. Therefore, even if defendant had permission prior to March 12, 2017, there was sufficient evidence presented to the jury to establish that Mindy revoked that permission on this specific occasion.

Finally, defendant also argues that there was insufficient evidence to convict him of witness intimidation or interference. This argument is also without merit. Mindy testified that defendant encouraged her to lie to the police and to avoid being served with a subpoena by hiding in the back bedroom of her trailer. Additionally, Mindy testified that defendant did not want her to testify unless she was willing to testify that she had scissors during the incident. Defendant even took her to the prosecutor's office to claim that she was the aggressor to "lessen the weight on defendant." Defendant also had Mindy write a letter to the prosecutor's office claiming that she had scissors and that defendant never touched her. Furthermore, as a result of defendant's conduct, Mindy admitted that she "sugarcoated" her preliminary examination

testimony. Therefore, there was sufficient evidence presented for the jury to convict defendant of the charge of witness intimidation or interference.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel